ACCEPTED
15-25-00016-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
2/13/2025 11:16 AM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00016-CV

IN THE FIFTEENTH COURT OF APPEALS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
2/13/2025 11:16:36 AM
CHRISTOPHER A. PRINE
Clerk

**IN RE MARTY BERRY AND AXIS MIDSTREAM HOLDINGS, LLC,**
*Relators.*

Original Proceeding from the Business Court 11A
Cause No. 24-BC11A-0025
Hon. Sofia Adrogué, Presiding

**RESPONSE TO RELATORS' EMERGENCY MOTION FOR TEMPORARY RELIEF**

TO THE HONORABLE FIFTEENTH COURT OF APPEALS:

**INTRODUCTION**

Over the past several months, Relator Marty Berry ("Marty")[1] has engaged in a coordinated scheme to usurp control of a billion-dollar crude oil terminal project from Real Party in Interest Albert Theodore Powers ("Ted"). Ted filed an application for a temporary injunction seeking to halt these efforts and preserve the status quo during litigation. After two days of hearings in late January, a temporary injunction hearing is set to conclude on Friday. Appendix 48. Marty's "emergency" request for a stay is simply a blatant attempt to avoid any ruling on the application

---

[1] Because several of the parties in this litigation share a last name, this Response refers to all parties using their first name to avoid any confusion.

1

for temporary injunction so he can continue his unlawful conduct undeterred—and render Ted powerless to stop it.

The Court should not indulge this gamesmanship. Relators' Emergency Motion for Temporary Relief (the "Motion") should be denied, for two reasons.

First, after a two-hour hearing, the trial court took Relators' request for a stay under advisement, deciding to conduct the temporary injunction hearing first before it ruled on the request for a stay. Exhibit 1.[2] This Court should permit the trial court to move forward as planned and prohibit Relators' attempt to circumvent the logical course of proceedings. If a stay were issued before the trial court has an opportunity to rule on the application for temporary injunction, it would undoubtedly prejudice Ted and upend the status quo.

Second, the crux of the Motion (and the Petition for Writ of Mandamus, for that matter) is that dominant jurisdiction over this litigation exists in Nueces County. Not so. The trial court did not abuse its discretion in denying Relators' Plea in Abatement and Motion to Transfer Venue. The "first filed" lawsuit Relators repeatedly point to involves different claims and different parties. Ted is not a party to that action. Moreover, the contract at issue in this case—which is not at issue in

---

[2] When possible, this Response cites to the Appendix filed by Relators in support of their Petition for Writ of Mandamus. For documents Relators did not include in that appendix, Ted has attached additional exhibits to this Response.

the Nueces County case—includes a forum selection clause requiring that suit be brought in Harris County. Exhibit 2 at § 5(a).

For these reasons, Ted respectfully requests that the Court summarily deny both the Emergency Motion for Temporary Relief, as well as the Petition for Writ of Mandamus without calling for a response.[3] In the alternative, the Court should defer ruling on the Motion until after the trial court rules on the application for temporary injunction and rules on the request for a stay.

### FACTUAL BACKGROUND

Ted has spent years working on behalf of Marty, Lawrence Berry ("Lawrence"), and Bonnie Berry ("Bonnie")[4] to develop and obtain funding for a crude oil delivery system and terminal project known as the Lone Star Ports Project (the "Project"). The Project will result in the construction of an oil export terminal on Harbor Island in the Port of Corpus Christi.

In exchange for his work, Ted and Real Party in Interest Allied Ports, LLC ("Allied Ports") received management rights and ownership interests in the Project (and in an entity known as Lone Star Port Holdings, LLC). This arrangement is

---

[3] If the Court requires a response on the merits of the Mandamus Petition, Ted will respond promptly.
[4] Although Lawrence and Bonnie are both Defendants in this lawsuit, they have not joined Relators in filing this mandamus action. Additionally, Bonnie Berry obtained her interest in the Project at issue in this case via Dennis Berry, who is now deceased.

memorialized in two contracts: an Investment Agreement and a separate compensation Agreement. *See* Exhibit 2 (containing the Investment Agreement).

However, since "Relator"[5] Axis Midstream Holdings, LLC ("Axis") received a valuable permit to allow construction on the Project to commence, Marty and Bonnie have engaged in coordinated efforts to circumvent those contracts and wrestle ownership and management of the Project away from Ted and Allied Ports. These efforts began last fall, when Marty and Bonnie noticed a meeting, improperly and without authority, to change the manager and officers of Axis.

To put a stop to this conduct, Ted and Allied Ports filed an Application for Temporary Restraining Order ("TRO") and Temporary Injunction. On October 31, 2024, Judge Lauren Reeder, sitting as ancillary judge, entered a TRO prohibiting Marty and Bonnie from moving forward with the meeting. Appendix 25. A hearing on the application for temporary injunction was set for November 12, 2024 in the 215th Judicial District Court of Harris County.

On November 8, 2024, Marty and Bonnie filed their Plea in Abatement. Appendix 26. On November 12, 2024, Real Parties in Interest responded. Appendix 27. That same day, the district court held a hearing. The parties ultimately agreed

---

[5] Counsel for Marty purports to also represent and file this original proceeding on behalf of Axis Midstream Holdings, LLC. Marty does **not** have authority to engage counsel on behalf of Axis and does not manage that entity. However, that issue is not relevant for purposes of determining the Motion and thus Ted will not address it here.

4

to extend the TRO until November 28, 2024, and the hearing on the temporary injunction was re-scheduled for November 18, 2024. The action was subsequently removed to the 11th Division of the Business Court (the "trial court") on November 15, 2024.

After removal, Marty and Bonnie filed a Motion to Remand, Dismiss, or Transfer the Case, asserting the same "dominant jurisdiction" arguments they asserted in their Plea in Abatement (and assert in this original proceeding). Exhibit 3. A Response and a Reply were filed. Exhibit 4, Appendix 28. The parties eventually agreed again to extend the TRO until December 6, 2024.

That day, the trial court held a three-hour hearing on the Plea in Abatement and Motions to Transfer Venue, Remand, and Dismiss. Appendix 31. On December 31, 2024, the Court ordered that all Parties prepare and file supplemental briefs, which were filed on January 9, 2025. Appendix 32, 33, 34, 35. The temporary injunction hearing was then re-set for January 29 and 30, 2025.

On January 17, 2025, the trial court denied the Plea in Abatement. Appendix 36. On January 27, 2025 (two days before the injunction hearing), Marty and Bonnie filed a Motion to Reconsider the Court's Ruling on the Plea in Abatement and a Motion to Stay Pending Mandamus. Exhibit 5. The Court held a two-hour hearing on the Motion to Reconsider and Motion to Stay. After the hearing, the Court denied

5

the Motion to Reconsider and took the Motion to Stay under advisement, allowing the temporary injunction hearing to move forward first. Exhibit 1, Exhibit 6.

On January 29 and 30, the Court held the temporary injunction hearing, and the hearing is set to conclude—***by agreement of all parties***—on Friday, February 14. Appendix 48. In an attempt to circumvent the conclusion of that hearing and any subsequent ruling, Relators have filed their "emergency" motion. For the reasons set forth below, it should be denied.

**ARGUMENT**

**I.      Entering a stay before the trial court has an opportunity to rule on the application for temporary injunction would upend the status quo.**

First, this Court should decline to enter a stay, given that the trial court has not yet concluded the temporary injunction hearing and entered an order. The trial court carefully considered Relators' request for a stay and decided to take the request under advisement and move forward with the temporary injunction hearing. Exhibit 1. The only reason to seek a stay from this Court now on an "emergency" basis is to try to avoid a ruling on the application for temporary injunction—and that is exactly what Relators are trying to do.

The real emergency will arise if there is a delay of the temporary injunction proceedings, as Real Parties in Interest are at risk of losing valuable management and ownership rights in the Project. The TRO expired on December 6, 2024. There is nothing in place to prevent Marty and Bonnie from restarting their attempts to

6

seize control of the Project. The issuance of a stay would thus undoubtedly prejudice Ted and Allied Ports, as the temporary injunction aims to preserve the status quo and prevent Relators from interfering with the ownership and control of the Project while suit is pending.

Accordingly, the Court should deny the Motion so that the trial court may continue with the temporary injunction hearing, enter an order, and then rule on the stay at the appropriate time.

## II.     Dominant jurisdiction does not exist in Nueces County.

Next, the Motion—as well as the Mandamus Petition—rests on the argument that dominant jurisdiction over this lawsuit exists in Nueces County.[6] This argument is wrong, on both the facts and the law, and thus the trial court did not abuse its discretion in denying the motions that were based on Marty's dominant jurisdiction arguments.

The Investment Agreement contains a forum selection clause[7] that provides for *exclusive* jurisdiction in Harris County:

---

[6] The case Relators claim mandates dominant jurisdiction is Cause No. 2024DCV-0045-C, *Lawrence Berry, et. al v. Marty Berry et. al.*, in the 94th Judicial District Court, Nueces County, Texas.

[7] At the time the Investment Agreement was signed, Ted was a resident of New York, New York and the other parties to the contract were residents of Texas. Hence, Section 5(a) of the Investment Agreement is a forum selection clause. Exhibit 2 at § 5(a).

> **(a)** **Governing Law, Jurisdiction, and Venue**. This Agreement and all issues and questions concerning its application, construction, validity, interpretation, and enforcement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to any choice or conflict of laws provisions or rules (whether of the State of Texas or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Texas. Powers and each of the Berrys hereby agrees that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in ==the state or federal courts in Harris County, Texas,== so long as one of such courts shall have subject-matter jurisdiction over such suit, action, or proceeding, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Texas.

Exhibit 2 at § 5(a).

Under Texas law, forum selection clauses are "presumptively valid." *See, e.g.*, *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010). Notably, the "burden of proof is heavy for the party challenging enforcement." *Id*.

The trial court did not abuse its discretion by enforcing the forum selection clause. Relators did not provide the trial court with any evidence to meet their "heavy" burden of proof to "clearly show" that the clause should not be enforced. *See id*. Moreover, Marty and Dennis (now Bonnie) agreed to "irrevocably waive[], to the fullest extent permitted by relevant law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding which is brought in any such court has been brought in an inconvenient forum." Exhibit 2 at § 5(a). The Supreme Court of Texas has enforced such waivers. *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 230–31 (Tex. 2008).

8

If for some reason this Court determines that section 5(a) of the Investment Agreement is not a mandatory forum selection clause, then it is clearly a mandatory venue provision, which provides that any dispute related to the contract "shall be brought in the state or federal courts in Harris County, Texas[.]" Exhibit 2 at § 5(a). Pursuant to Tex. Civ. Prac. & Rem. Code § 15.020, if any party to an agreement is to receive greater than $1 million, which constitutes a "major transaction," then venue is mandatory in the county selected by the parties to the agreement. *Id.* at 15.020(a). Venue is thus mandatory in Harris County, as the Investment Agreement qualifies as a "major transaction."[8] Mandatory venue under the major transaction statute trumps all other mandatory venue provisions (though no other mandatory venue provisions apply here). *See* Tex. Civ. Prac. & Rem. Code § 15.020(c)(2); *In re Fisher*, 433 S.W.3d 523, 534 (Tex. 2014).

For dominant jurisdiction to exist, venue over the second-filed case must be proper in the county of the first-filed case. *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005). That is not the situation here. As set forth above, pursuant to the forum selection clause (or venue selection clause), mandatory exclusive venue over this case is in Harris County. Stated differently, the claims in

---

[8] Relators stipulated that the Business Court had subject matter jurisdiction over this case, thereby stipulating that the amount in controversy in this case is at least $5 million. Exhibit 7.

this case ***cannot*** be adjudicated in Nueces County. For that reason alone, dominant jurisdiction does not exist. *See Gonzalez*, 159 S.W.3d at 622.

Furthermore, no "inherent interrelation" exists between this case and the Nueces County case, so dominant jurisdiction is not applicable. *See, e.g.*, *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 292 (Tex. 2016). This case involves different parties and different claims—Real Parties in Interest are not parties in the Nueces County case, and Relators have not attempted to join them as parties, either.

To determine whether an inherent interrelationship exists, courts look to the compulsory counterclaim rule to determine if the claims in the second action would be compulsory counterclaims in the first action. *See id.* at 292 (citing Tex. R. Civ. P. 97(a)). Three elements of the compulsory counterclaim rule are missing here.

First, the Nueces County court would not have jurisdiction over the claims in this case, as required by the compulsory counterclaim rule, because the forum selection clause (or mandatory venue provision) in the Investment Agreement requires the case be brought in Harris County. *See* Tex. R. Civ. P. 97(a); Exhibit 2 at § 5(a).

Second, Real Parties in Interest's claims are not against an "opposing party" in the Nueces County lawsuit, because Real Parties in Interest are ***not*** parties to that lawsuit, nor should they be. *See id.*; Tex. R. Civ. P. 97(a). "The compulsory counterclaim rule contemplates situations where the primary parties…are already

10

before the court as parties to the action." 2 McDonald & Carlson Tex. Civ. Prac. § 9:79 (2d. ed.). "It does not contemplate a situation where no cross-defendant is a party to the action and one can be brought in only with leave of the court and for such purposes only as the court may permit." *Id.* In sum, Rule 97(a) does not require anyone who is not already a party to a lawsuit to intervene in the lawsuit and bring forth related claims, particularly, as in this case, when doing so would violate an enforceable forum selection clause. *See Ruebbling v. Foremost Cnty. Mut. Ins. Co.*, No. 08-23-00054-CV, 2024 WL 339114 at *6 (Tex. App.—El Paso Jan. 29, 2024, no pet.).

Lastly, the two actions do not arise out of the "same transaction or occurrence." Tex. R. Civ. P. 97(a). To determine whether a claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claims," courts "apply a logical relationship test." *Id.*; *Encore Enter., Inc. v. Borderplex Realty Tr.*, 583 S.W.3d 713, 722 (Tex. App.—El Paso 2019, no pet.). This test is only met when the same facts, which may or may not be disputed, are significant and logically related to both claims. *Id.* Claims are logically related where separate trials on each claim "would involve a substantial duplication of effort and time by the parties and courts." *White v. Rupard*, 788 S.W.2d 175, 178 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

The cases here are not logically related. This lawsuit is a breach of contract case involving two contracts between Ted, Lawrence, Dennis (now Bonnie), and Marty, related to Real Parties in Interest's ownership of, compensation for, and control over the Project. By contrast, the Nueces County lawsuit involves allegations of breach of fiduciary duty, improper loans, and self-dealing between members of the Berry family and various owners of various Berry family entities. Tellingly, the pleadings in the Nueces County lawsuit do not even mention the contracts at issue in this case.

In an apparent attempt to provide support for their dominant jurisdiction claim, Relators allege that Real Parties in Interest and Lawrence "teamed up" against Relators to obtain a TRO. Though irrelevant to the Motion, it is worth noting that this is not true. Lawrence is a named defendant in this lawsuit and Real Parties in Interest are seeking relief that would have a substantial adverse financial effect on him. In reality, Relators' complaint stems from the fact that Lawrence gave testimony on a key issue that was helpful to Real Parties in Interest, even though it was not in Lawrence's best interest to do so. That does not mean that Lawrence and Real Parties in Interest have "teamed up" against Relators. It just means Lawrence testified truthfully.

Despite the distinction between this case and the Nueces County case, Relators have improperly attempted to manufacture dominant jurisdiction in Nueces

12

County. Just four days after the trial court denied Relators' Motion to Abate, Berry GP, an entity represented by the same counsel as Relators, filed an application for a TRO and temporary injunction in the Nueces County lawsuit. In that application, Berry GP actually sought (among other things) to prohibit Lawrence from truthfully testifying about the ownership of Axis—a direct attempt to try to limit Real Parties in Interest from obtaining necessary testimony at the temporary injunction hearing in this case. Appendix 37. The court in Nueces County denied the TRO on January 27, 2025. Appendix 39.

After losing that battle, on January 28, Berry GP filed a Supplemental and Third-Party Petition in the Nueces County lawsuit adding Lone Star Ports Enterprises, LLC, another Project entity, as a party in the Nueces County case. Appendix 41. Additionally, on February 5, after the first two days of the temporary injunction hearings in this case, Redfish Bay Terminals, Inc. and Canada Project Holdings Inc. filed a Petition in Intervention in the Nueces County lawsuit to adjudicate ownership interests in various Berry-related entities, including Lone Star Ports Enterprises, LLC. Appendix 49.

All of these actions were attempts by Relators to manufacture dominant jurisdiction in Nueces County out of thin air *after the trial court had already ruled against them on the issue twice*. But dominant jurisdiction cannot be acquired by subsequent pleadings that do not relate back to the original transaction or occurrence.

13

*See Warren v. Weiner*, 462 S.W.3d 140, 145 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("But a pleading does not relate back if 'the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.'"). As a result, Relators' efforts to create dominant jurisdiction fail. Because dominant jurisdiction does not exist, the Motion (and Mandamus Petition, for that matter) should be denied.

## CONCLUSION AND PRAYER

For the foregoing reasons, the Court should summarily deny Relators' Emergency Motion for Temporary Relief and Petition for Writ of Mandamus.

In the alternative, the Court should (1) defer ruling on the Motion until after the trial court rules on the application for temporary injunction and considers the request for a stay, and (2) enter a deadline for Real Parties in Interest to respond to the Mandamus Petition.

Respectfully submitted,

**BECK REDDEN LLP**

By: */s/ Alistair B. Dawson*
    Alistair B. Dawson
    State Bar No. 05596100
    adawson@beckredden.com
    Mary Kate Raffetto
    State Bar No. 24098296
    mkraffetto@beckredden.com
    M. Jake McClellan
    State Bar No. 24109525
    jmcclellan@beckredden.com

14

Madeline E. Gay
State Bar No. 24138681
mgay@beckredden.com
1221 McKinney, Suite 4500
Houston, TX 77010
(713) 951-3700
(713) 951-3720 (Fax)

**Attorneys for Real Party In Interest,
Albert Theodore Powers**

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2025, a true and correct copy of the foregoing response has been electronically filed and served on all counsel below. *See* Tex. R. App. P. 9.2(c)(1), 9.5(b)(1).

Douglas A. Allison
**LAW OFFICE OF DOUGLAS ALLISON**
doug@dallisonlaw.com
403 N. Tancahua Street
Corpus Christi, Texas 78401

Vanessa D. Gilmore
**ROBERTS MARKLAND LLP**
2555 N. MacGregor Way
Houston, TX 77004

*Counsel for All Relators*

Roland Garcia
**GREENBERG TRAURIG, LLP**
1000 Louisiana Street, Ste. 6700
Houston, TX 77002
*Attorneys for Real Party In Interest,*
*Allied Ports, LLC*

Barrett H. Reasoner
Michael R. Absmeier
L. Bruce Baldree
Sydney G. Ballestros
**GIBBS & BRUNS, LLP**
1100 Louisiana Street, Ste. 5300
Houston, TX 77002
*Attorneys for Real Party In Interest,*
*Allen Lawrence Berry*

The Honorable Sofia Adrogué
11A Texas Business Court
BCDivision11A@txcourts.gov
*Respondent*

/s/ Alistair B. Dawson
Alistair B. Dawson

16

# EXHIBIT 1



## THE BUSINESS COURT OF TEXAS
### ELEVENTH DIVISION

| | | |
|---|---|---|
| Albert Theodore Powers; Allied Ports LLC, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Cause No. 24-BC11A-0025 |
| Axis Midstream Holdings, LLC; Allen Lawrence Berry; Marvin Glenn Berry; and Bonnie Berry as successor in interest to Dennis Wayne Berry, | § § § § § § | |
| Defendants. | § | |

## ORDER

Before the Court is Marvin Glenn Berry, Bonnie Berry, and Axis Midstream Holdings LLC's Motion to Stay Pending Mandamus ("Motion to Stay"). At this juncture, having considered the Motion to Stay; Alistair B. Dawson's January 28, 2025 Correspondence; Barrett H. Reasoner's January 28, 2025 Correspondence; the evidence presented; the arguments of counsel; and the current status of the law, the Court is taking the Motion to Stay under advisement.

SO ORDERED.

SIGNED: January 28, 2025

_____
Hon. Sofia Adrogue
Texas Business Court, Eleventh Division

# EXHIBIT 2

# INVESTMENT AGREEMENT

THIS INVESTMENT AGREEMENT (the "Agreement") is made and entered into as of the 1st day of November, 2018 by and among Marvin Glen Berry, Dennis Wayne Berry, and Allen Lawrence Berry (collectively, the "Berrys"), and Albert Theodore Powers ("Powers") (each of the Berrys and Powers being referred to herein individually as a "Party" and collectively as the "Parties").

## RECITALS:

WHEREAS, the Berrys have devised a plan to develop, construct, own, and operate a system to allow hydrocarbon shippers maximum optionality to deliver hydrocarbons to local refinery markets in the vicinity of Corpus Christi, Texas and to export hydrocarbons via a premier United States Gulf Coast deep-water exporting facility, including without limitation shipping, reception, collection, consolidation, storage, staging, delivery, and exporting facilities, including a deep-water export terminal on Harbor Island, Texas, related tankage and pipelines, and other associated infrastructure, assets, facilities, and businesses, including without limitation certain real property and improvements currently owned, leased, optioned, or otherwise controlled by the Berrys and others at Redfish Bay, Midway Junction, and Harbor Island, Texas and additional properties and facilities to be acquired, leased, optioned, developed, or otherwise controlled by the Berrys and others (collectively, the "Project"); and

WHEREAS, simultaneously with this Agreement, the Parties are entering into another Agreement, pursuant to which the Berrys are appointing Powers as their representative and chief negotiator and adviser for the financing of the Project including without limitation negotiations with The Carlyle Group, and to perform due diligence, advice, and assistance regarding the sourcing of capital, develop strategy, and provide financial management and structuring advice and services. It is understood that Powers shall investigate various alternatives for financing all or portions of the Project, discuss with the Berrys various financing alternatives, assist the Berrys in formulating and interpreting financial projections for the Project and various potential transactions relating to the Project, assist the Berrys in formulating strategies to arrange the most favorable forms of financing for the Project, make financing recommendations to the Berrys, assist the Berrys in formulating strategies for achieving the most favorable terms for financing the Project, assist the Berrys in formulating business and holding structures for the Project, and negotiate terms and conditions of financing for the Project on behalf of the Berrys with various potential finance providers, including without limitation The Carlyle Group; and

WHEREAS, the Berrys and Powers wish to cooperate to (a) devise an ownership structure for directly and indirectly holding the Project and each of its major components, (b) secure third party financing for the Project, and (c) own and hold a portion of all interests in the Project, upon and subject to the terms and conditions of this Agreement;

NOW, THEREFORE, in consideration of the foregoing recitals and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Berrys and Powers hereby agree as follows:

1. **Creation of Holding Structure and Contribution of Project and Project Interests**. On or before May 31, 2019 (a) the Berrys and all other owners of interests in the Project and its major components or their respective designees will form one or more corporations, limited liability companies, or other tax efficient limited liability entities (each a "**Project Company**" and, collectively, the "**Project Companies**) to collectively own and hold one hundred percent (100%) of all equity interests in the Project and its major components, (b) the Berrys will transfer to the Project Companies one hundred percent (100%) of their interests in the Project and each of its major components in exchange for one hundred percent (100%) of the equity interests in the Project Companies, (c) the Berrys will form a limited liability company or other tax efficient limited liability entity ("**Holding Company**") to hold all equity interests in the Project Companies, (d) the Berrys will contribute to Holding Company all equity interests in the Project Companies in exchange for one hundred percent (100%) of the equity interests in Holding Company, (e) the Berrys will form a limited liability company or other tax efficient limited liability entity ("**Investment Company**") to hold all equity interests in Holding Company, and (f) the Berrys will contribute to Investment Company all equity interests in Holding Company in exchange for one hundred percent (100%) of the equity interests in Investment Company.

2. **Investment By Manager in Investment Company**. Within fifteen (15) days after (a) the Berrys and all other owners of interests in the Project and its major components or their respective designees have formed the Project Companies and transferred one hundred percent (100%) of their interests in the Project and each of its major components to the Project Companies, (b) all equity interests in the Project Companies have been contributed to Holding Company, (c) all equity interests in Holding Company have been contributed to Investment Company, and (d) the Berrys or their designees have received all equity interests in Investment Company (i) Powers will form a limited liability company or other tax efficient limited liability entity that is wholly owned by, or for the benefit of, Powers or his designees ("**Manager**"), (ii) Powers will contribute Five Thousand United States Dollars (US$5,000.00) to Manager in exchange for one hundred percent (100%) of Manager's operating interests and other ownership rights and interests, and (iii) Manager will contribute Five Thousand United States Dollars ($5,000) to Investment Company in exchange for a twenty percent (20%) overall carried interest and future profits interest in Investment Company after priority distributions to the Berrys or their designees of Two Hundred Fifty Million United States Dollars ($250,000,000) plus a ten percent (10%) cumulative preferred return on the outstanding balance of such amount. Except for the Five Thousand United States Dollar ($5,000) contribution to Manager and Investment Company described above, none of Manager, Powers, or any of their respective designees shall have any other obligation to contribute any other amounts to Investment Company, Holding Company, or any Project Company. The governing documents of Investment Company will reflect the respective interests of the Berrys, including their entitlement to priority distributions and preferred returns, and Investment Manager's twenty percent (20%) overall carried interest and future profits interest in Investment Company. Until the Berrys receive a priority return from Investment Company, Holding Company, and/or the Project Companies of Two

2

Hundred Fifty Million United States Dollars ($250,000,000) plus a ten percent (10%) cumulative preferred return on the outstanding balance of such amount, all gross amounts received by, or distributions made to, or on behalf of, Investment Company, Holding Company, and the Project Companies, including without limitation all earnings, proceeds, dividends, refinancing proceeds, disposition proceeds, incentive units or payments, or other receipts of any type or nature, shall be distributed to and paid to or on behalf of the Berrys or their designees and none of such amounts shall be paid or payable to or for the benefit of Manager or its designees. After the Berrys or their designees have received their priority distributions of Two Hundred Fifty Million United States Dollars plus a ten percent (10%) cumulative preferred return on the outstanding balance of such amount and Manager has received catch-up distributions from the Investment Company, eighty percent (80%) of all gross amounts received by, or distributions made to, or on behalf of Investment Company, Holding Company, and the Project Companies, including without limitation all earnings, proceeds, dividends, refinancing proceeds, disposition proceeds, incentive units or payments, or other receipts of any type or nature, shall be distributed to and paid to or on behalf of the Berrys or their designees and twenty percent (20%) of such amounts shall be paid or payable to or for the benefit of Manager or its designees. It is intended that the interests of Manager in Investment Company will qualify (i) as a carried interest within the meaning of Section 1061 of the United States Internal Revenue Code, and (ii) as a future profits interest within the meaning of Revenue Procedure 93-27, and that the governing documents of Investment Company will be drafted to reflect this intent. It is also intended that the capital accounts to be established and maintained by Investment Company will comply with the requirements of Treasury Regulations §1.704-1(b)(2)(iv) or any successor provision, and that such provisions will be interpreted and applied in a manner consistent with such Treasury Regulations or successor provisions and that the targeted allocations to be made to such capital accounts will reflect the Members' interests in the Company and have substantial economic effect. On or before the fifth (5th) day of each month, the Berrys shall provide to Manager a statement setting forth the total amounts of preferred return and priority distributions, if any, that have been received by them from Investment Company, Holding Company, and the Project Companies. Manager shall review each such statement and either confirm its agreement with the amounts shown on such statement or provide an alternative calculation of such amounts. If the Berrys and Manager do not agree on such calculation, they shall meet and attempt to reconcile their differences in the calculation of such amounts before resorting to any other remedy.

3. **Financing of Project**. To finance the development of the Project, it is anticipated that Investment Company will transfer its equity interests in Holding Company and/or one or more Project Companies to one or more other corporations, limited liability companies, or other tax efficient limited liability entities (each, a "**Project Entity**" and. collectively, the "**Project Entities**") that will be jointly owned by Investment Company and other investors that will contribute equity capital for the development of the Project. In exchange for contributing its interests in Holding Company and/or one or more of the Project Companies to such Project Entities, it is anticipated that Investment Company will receive (a) shares, operating interests, or other equity interests in the Project Entities, (b) other rights and interests, including incentive

interests, incentive units, or other benefits in or from the Project Entities, and (c) other amounts directly or indirectly received, or distributions made, in respect of the Project Entities, including without limitation earnings, proceeds, dividends, refinancing proceeds, disposition proceeds, incentive units or payments, and other receipts of any type or nature in respect of or relating to the Project or any Project Company (collectively, "**Project Interests**").

4. **Distributions From Project Entities**. All (a) shares, operating interests, or other equity interests in the Project Entities, (b) other rights and interests, including incentive interests, incentive units, or other benefits in or from the Project Entities, and (c) Project Interests shall be distributed to and held by Investment Company. Distributions shall be made from Investment Company in accordance with the governing documents of Investment Company, which shall reflect the interests of the Berrys, including their entitlement to priority distributions and preferred returns, and the twenty percent (20%) carried interest and future profits interest of Manager.

5. **Miscellaneous Provisions**.

(a) **Governing Law, Jurisdiction, and Venue**. This Agreement and all issues and questions concerning its application, construction, validity, interpretation, and enforcement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to any choice or conflict of laws provisions or rules (whether of the State of Texas or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Texas. Powers and each of the Berrys hereby agrees that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the state or federal courts in Harris County, Texas, so long as one of such courts shall have subject-matter jurisdiction over such suit, action, or proceeding, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Texas. Powers and each of the Berrys hereby irrevocably consents to the exclusive jurisdiction of such courts and of the appropriate appellate courts therefrom in any such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by relevant law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding which is brought in any such court has been brought in an inconvenient forum.

(b) **Notices**. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of (i) actual receipt, (ii) the time of personal delivery to the party to be notified, (iii) when sent, if sent by electronic mail during normal business hours of the recipient, and if not sent during normal business hours, then on the recipient's next business day, (iv) five (5) days after

4

having been sent by registered or certified United States Post Office air mail, return receipt requested, postage prepaid, or (v) one (1) business day after deposit with a nationally recognized overnight air courier, freight prepaid, specifying next business day delivery, with written verification of receipt. All communications shall be sent to the respective Parties at their addresses as set forth in this section or to such addresses as subsequently modified by written notice given in accordance with this section. Each Party to this Agreement agrees to promptly notify the other Parties of any change in its address or electronic mail address, and any failure to do so shall not affect the foregoing.

Mailing and delivery address for Marvin Glen Berry, Dennis Wayne Berry, Allen Lawrence Berry, Bay Ltd, and all Berry entities:

> Berry Group
> 5005 Riverway
> Suite 440
> Houston, Texas 77056
>
> Email address for Allen Lawrence Berry:
> alb@riverway.us
>
> Email address for Marvin Glen Berry:
> captberry@aol.com
>
> Email address for Dennis Wayne Berry:
> berryd@bayltd.com

Mailing and delivery address for Albert Theodore Powers and Manager:

> Albert Theodore Powers
> 205 West 57th Street
> Apartment 4C
> New York, New York 10019
>
> Email address for Albert Theodore Powers
> atpowers@allied-pacific-group.com

(c) **Delays or Omissions**. No delay or omission to exercise any right, power, or remedy accruing to any Party under this Agreement, upon any breach or default of any other Party under this Agreement, shall impair any such right, power, or remedy of such non-breaching or non-defaulting Party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any

5

waiver, permit, consent, or approval of any kind or character on the part of any Party of any breach or default under this Agreement, or any waiver on the part of any Party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any Party, shall be cumulative and not alternative.

(d) **Amendment, Waiver, and Termination**. This Agreement may be amended, modified, or terminated and the observance of any term hereof may be waived (either generally or in a particular instance and either retroactively or prospectively) only by a written instrument executed by all Parties. Any amendment, modification, termination, or waiver so effected shall be binding upon the Parties and all of their respective successors and permitted assigns whether or not such Party, successor, assignee, or other individual or entity entered into or approved such amendment, modification, termination, or waiver. No waivers of or exceptions to any term, condition, or provision of this Agreement, in any one or more instances, shall be deemed to be, or construed as, a further or continuing waiver of any such term, condition, or provision or any other term, condition, or provision.

(e) **Assignment of Rights**. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns. Nothing in this Agreement, express or implied, is intended to confer upon any individual or entity other than the Parties hereto or their respective successors and permitted assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement. Any successor or permitted assignee of any of the Berry Interests, including without limitation any prospective transferee who purchases any direct or indirect interest in the Project and/or any inter vivos or testamentary donee or transferee of any such interest, shall deliver to Powers, as a condition to any transfer or assignment, a counterpart signature page hereto pursuant to which such successor or permitted assignee shall confirm his or its agreement to be subject to and bound by all of the provisions set forth in this Agreement that were applicable to the predecessor or assignor of such successor or permitted assignee.

(f) **Severability**. The invalidity or unenforceability of any provision of this Agreement shall in no way affect the validity or enforceability of any other provision.

(g) **Titles and Subtitles**. The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

(h) **Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which

6

together shall constitute one and the same instrument. Counterparts may be delivered via electronic mail (including pdf or any electronic signature complying with the United States Federal ESIGN Act of 2000, i.e., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

(i)     **Specific Performance**. In addition to any and all other remedies that may be available at law in the event of any breach of this Agreement, each Party shall be entitled to specific performance of the agreements and obligations of the other Parties hereunder and to such other injunctive or other equitable relief as may be granted by a court of competent jurisdiction.

(j)     **No Partnership**. This Agreement does not create or constitute any partnership, joint venture, or other similar relationship among the Parties, no such relationship shall be implied, and no Party shall make any representation to the contrary.

(k)     **Advice of Counsel**. Each Party hereby acknowledges that he has sought and obtained the advice of legal counsel before entering into this Agreement and has fully read and understands the meaning and import of all terms in this Agreement.

(l)     **Entire Agreement**. This Agreement constitutes and expresses the entire agreement and understanding among the Parties in reference to all matters referred to; all previous discussions, promises, representations, and understandings relative thereto, if any, among the Parties, being herein merged. No modification of this Agreement shall be binding unless in writing and signed by authorized representatives of all Parties.

**IN WITNESS WHEREOF**, the Parties, intending to be bound, have executed this Agreement as of the date first written above.

_____
ALLEN LAWRENCE BERRY

_____
MARVIN GLEN BERRY

DENNIS WAYNE BERRY

ALBERT THEODORE POWERS

**8**

# EXHIBIT 3

E-filed in the Office of the Clerk
for the Business Court of Texas
11/20/2024 5:42 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

**CAUSE NO. 24-BC11A-0025**

| | | |
|---|---|---|
| **ALBERT THEODORE POWERS;** | § | **IN THE BUSINESS COURT** |
| **ALLIED PORTS LLC,** | § | |
| | § | |
| ***Plaintiffs,*** | § | |
| | § | |
| **v.** | § | **11A – STATE OF TEXAS** |
| | § | |
| **AXIS MIDSTREAM HOLDINGS LLC;** | § | |
| **ALLEN LAWRENCE BERRY;** | § | |
| **MARVIN GLENN BERRY; and** | § | |
| **BONNIE BERRY, as successor in** | § | |
| **interest to DENNIS WAYNE BERRY** | § | |
| | § | |
| ***Defendants.*** | § | **HONORABLE SOFIA ADROGUE** |

## MOVANTS' MOTION TO REMAND, DISMISS, and/or TRANSFER VENUE
### (pursuant to Texas Government Code, Chapter 25A)

NOW COMES Martin Glenn Berry ("Marty") and Bonnie Berry ("Bonnie"), Defendants below and sometimes together referred to as "Movants," and make and file this Movants' Motion to Remand, Dismiss, and/or Transfer Venue (pursuant to Texas Government Code, Chapter 25A), and in support of same would show:

### I.
### Procedural Status

Effective as of September 1, 2023, Texas Government Code Chapter 25A sets forth the statutory framework for all Texas Business Courts. Texas Business Court, Eleventh Division, commenced operations effective September 1, 2024 – with such Eleventh Division being inclusive of Harris County, Texas. Subject to the provisions of Texas Government Code Chapter 25A, Lawrence Berry ("Lawrence") has filed a Notice of Removal to Business Court

("Notice of Removal"), as of November 15, 2024.  Movants, respectfully, would show that Lawrence's Notice of Removal is defective, and thus the matter must be remanded, dismissed, or transferred to Nueces County, Texas (the county of mandatory venue).

## II.
## Background

*Plaintiffs' Allegations –*

In the instant matter, Plaintiffs'[1] petition seeks to "protect their management rights and 20% interest in a crude oil deliver system and terminal project"[2] in Nueces County, Texas.[3]  To do so, Plaintiffs prayed for and secured a Temporary Restraining Order ("TRO") enjoining Movants from " . . . transferring in any way the ownership [or] property . . . rights of any entity associated with the Project."[4]  Plaintiffs plead that "[t]he three Berry Brothers [Marty, Dennis (survived by his wife, Bonnie), and Lawrence] entered into agreements with Powers [entitling Plaintiffs to] "a 20% ownership interest in a company called Lone Star Ports Holdings, LLC [LSPH] in connection with what is referred to as the Lone Star Ports Project"[5] (the "Project").  Plaintiffs plead that Plaintiffs' "ownership" interest in LSPH, coupled with the LSPH Operating Agreement, allows for Plaintiffs' management and sole control of Axis Midstream Holdings LLC ("Axis")[6] – the company holding the " . . . permitting rights

---

[1] Plaintiffs are Allied Ports LLC and Albert Theodore Powers.
[2] See Plaintiffs' Verified Second Amended Petition and Application for Temporary Restraining Order and Temporary Injunction ("Plaintiffs' Second Amended Petition"), at p. 1.
[3] See Affidavit of Michael Hummell, on file.
[4] See Exhibit 1 (TRO).
[5] See Plaintiffs' Second Amended Petition, at p. 1 (referring to an "Investment Agreement" never signed by Marty Berry, Dennis Berry, or Bonnie Berry).
[6] See Plaintiffs' Second Amended Petition, at p. 7, footnote 5 (Plaintiffs assert: "[Lone Star Ports Enterprises LLC] LSPE's sole Member and Manager is Lone Star Ports Ventures, LLC ("LSPV").  LSPV's sole Member and manager is Lone Star Ports Holdings, LLC ("LSPH").  LSPH has five Members, each owning 20% of the membership units.  Plaintiffs Allied Ports LLC is LSPH's sole Manager.").  Exhibit 2 (Organizational Chart) diagrams Plaintiffs' allegations of ownership and sole control of Axis Midstream Holdings LLC (highlighted in

2

associated with development of the Project"[7] (Berry GP, wholly owned by Marty/ Bonnie/Lawrence, having fully funded the investment (approximately $25 million[8])). Plaintiffs complain: "If Marty and Bonnie are allowed to proceed to transfer ownership, management, and control of Axis to themselves, Plaintiffs will be deprived of their agreed to and bargained for management rights and 20% interest in the Project."[9]  This lawsuit is all about ownership, control, and property related to the project (thus directly involving Marty, Bonnie, Berry GP, Axis, and other Berry-Related Companies, on the one hand; and Powers/Allied Ports LLC, Lawrence, and their collection of companies, on the other hand).

*Defendants (Marty and Bonnie) Allegations –*

Plaintiffs concede that "Defendant Allen Lawrence Berry ("Lawrence") acknowledges Plaintiffs' interest"[10] [thus is a friendly Defendant], and Plaintiffs further plead that "Marvin Glenn Berry ("Marty") and Bonnie Berry, as successor in interest to Dennis Wayne Berry ("Bonnie"), have made clear they will not honor their agreements or acknowledge Allied's ownership interest in Lone Star Ports Holdings, LLC . . . ."[11]  Marty/ Bonnie deny Plaintiffs' alleged right of ownership and control of the Project and its property because: (1)

---

red).  Plaintiffs' Second Amended Petition complains of Marty/Bonnie attempting to take "control" of Axis eight (8) times – it is the central theme of Plaintiffs' complaint.

[7] See Plaintiffs' Second Amended Petition, at p. 7.

[8] See Exhibit 3 (available in camera).

[9] See Plaintiffs' Second Amended Petition, at p. 11.

[10] See Plaintiffs' Second Amended Petition, at p. 1.

[11] See Plaintiffs' Second Amended Petition, at p. 1.

Marty/Bonnie never signed the Investment Agreement,[12] or any document,[13] upon which Plaintiffs' rely for their alleged 20% ownership interest and "Manager" control-position; and (2) Berry GP is the only (100%) Member and sole Manager of Axis Midstream Holdings LLC.[14] ***The transfer of Axis (100% ownership) to Berry GP, and naming of Berry GP as sole Manager, is the last valid transfer of Axis to anyone or any legal entity.*** To be clear, there is a purported, subsequent transfer of Axis from Berry GP to Redfish Bay Terminals Inc. ("RBT"),[15] but this purported transfer never received majority approval from Berry GP's Board of Directors (as required by Texas law and Berry GP's by-laws).[16] There is another purported, subsequent transfer of Axis from RBT (a company wholly owned by Berry GP) to LSPH,[17] but – again – this purported transfer never received majority approval from RBT's Board of Directors (as required by Texas law and RBT's by-laws).[18] Lawrence signed the Berry GP-to-RBT transfer of interest in Axis, but was only one (1) of three (3) directors (not a majority, and

---

[12] See Plaintiffs' Second Amended Petition, Exhibit 2 (this proposed "Investment Agreement" (which is the basis for Powers' claim to "twenty (20%) overall carried interest" and claim to be sole "Manager") was drafted to be "by and among Marvin Glen Berry, Dennis Wayne Berry, and Allen Lawrence Berry (collectively, the "**Berrys**"), and Albert Theodore Powers ("**Powers**")" (pp. 1-2). However, this proposed/draft document was never signed by Martin Berry, and never signed by Dennis Berry (both of whom rejected terms of the proposed agreement) – but, as always, signed by Lawrence Berry (without required authority).

[13] See alleged LSPH Amended and Restated Operating Agreement (referred to as Exhibit 7 to Plaintiff's Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction – such Exhibit 7 omitted from Plaintiffs' Second Amended Petition, yet available for in camera review), stating ""Manager" means Allied Ports, LLC . . . ." and "The Company [LSPH] shall be managed by the Manager, Allied Ports, LLC . . . ." NOTE: It makes absolutely no sense whatsoever that Berry GP (then-controlled by majority vote Marty, Dennis, and Lawrence) would ever spend $25 million to develop the Project, and simply give sole control of the Project to Plaintiffs. This would never, never, never happen – and did not happen. Marty never signed the alleged LSPH operating agreement. Dennis (now Bonnie) never signed the alleged LSPH operating agreement. As always, Lawrence Berry signed it (without required authority).

[14] See ALB 0007563 (transfer of 100% ownership and 100% control of Axis Midstream Holdings LLC from Gansevoort Investments LLC (a Berry-Related Company) to Berry GP Inc. ("Berry GP," a Berry-Related Company) – a transfer that all parties recognize as valid.

[15] See ALB 0001057 subject to Protective Order.

[16] See Exhibit 4 (By-laws of Berry GP, Inc., available in camera).

[17] See ALB 0001061 subject to Protective Order.

[18] See Exhibit 5 (By-laws of Redfish Bay Terminals, Inc., available in camera).

4

thus the transfer lacked authority).  Lawrence signed the RBT-to-LSPH transfer of interest in Axis, but Lawrence was then only one (1) of four (4) directors (not a majority, and thus the transfer lacked authority).  Demonstratively, the most recent-in-time transfer of Axis Midstream Holdings LLC is from Gansevoort Investments LLC ("Gansevoort") to Berry GP (making Berry GP owner of 100% of the membership units of Axis, and sole Manager of Axis).[19]

*Nueces County Lawsuit –*

On or about November 27, 2023 (a year ago), Lawrence sued Marty, Berry GP, and other Berry-Related Companies (in Harris County, Texas).[20]  In this ***first-filed*** lawsuit, Lawrence procured an ex-parte Temporary Restraining Order ("TRO"), and Amended TRO ("ATRO").[21]  By agreement of the parties (given real property was in issue), the lawsuit was transferred from Harris County, Texas, to Nueces County, Texas[22] (this lawsuit now referred to as the "Nueces County Lawsuit").  In the Nueces County Lawsuit, Lawrence pleaded that: (1) Berry GP Inc. is "majority owned in equal shares by Plaintiff Lawrence Berry and his two brothers, Marty Berry ("Marty") and Dennis Berry ("Dennis");"[23]  (2) Marty, Berry GP, and others "have begun secretly attempting to sell the company's real property . . . without notice to or authorization from the [Berry GP] Board of Directors;"[24] "ownership and primary control of [Berry GP] is vested with Lawrence and his two brothers [Marty and Dennis];"[25] the "Berry

---

[19] See ALB 0007563 subject to Protective Order.
[20] See Exhibit 6 (Lawrence's first-filed petition).
[21] See Exhibits 1 and 7 (TRO and ATRO).
[22] See Exhibit 8 (agreed Order to Transfer Venue).
[23] See Exhibit 6, at p. 2.
[24] See Exhibit 6, at p. 2-3.
[25] See Exhibit 6, at p. 7.

Entities are primarily governed by the Board of Directors of Berry GP, Inc. (the "Board"), in accordance with the Bylaws of Berry GP, Inc.";[26] the "Board consists of directors Lawrence, Marty, and Dennis;"[27] and that Marty breached fiduciary duties "without giving notice to or obtaining the consent or approval of Berry GP, Inc.'s Board."[28] Relying upon his pleadings that action taken without approval of the Berry GP Board of Directors was breach of fiduciary duty, Lawrence requested relief by TRO and Temporary Injunction enjoining "Marty Berry, and Berry GP [et al] from selling, mortgaging, or otherwise encumbering any of the Berry Entities' real property" without Lawrence's sole approval.[29]  In this **first-filed** lawsuit, Lawrence initially obtained relief by TRO that Marty Berry and Berry GP (et al) are "restrained from selling any of the Berry Entities' real property,"[30] and obtained further relief by TRO that Marty Berry and Berry GP (et al) are "restrained from modifying the composition of the Board of Directors of the Berry Entities."[31]  After three (3) full days of testimony/evidence in consideration of Lawrence's application for temporary injunction, the Honorable Judge Robert Galvan ordered:

> "So, the Court has heard evidence over a three-day
> period: Temporary injunction requested.  Bylaws provide
> for the removal and appointment of a Board of Director,
> so I'm not gonna interfere with that.
>
> With regard to the second issue the Court
> will partially grant for any sale of real property

---

[26] See Exhibit 6, at p. 7.
[27] See Exhibit 6, at p. 7.
[28] See Exhibit 6, at p. 14.
[29] See Exhibit 6, at p. 18.
[30] See Exhibits 1 and 7 (TRO and ATRO).
[31] See Exhibit 7, ATRO at p2.

there must be 48 hours' notice to all Board
members; whoever they may be at the time."[32]

In the Nueces County Lawsuit, the Honorable Judge Robert Galvan has already ruled that there will be no injunctive relief that enjoins Marty Berry or Berry GP (or Berry Contracting LP, or Berry Operating Company LLC, or other Berry-Related Companies) from changing or modifying who is a member of these various boards of directors, and that transfer of real property is not enjoined (subject to 48 hours' notice to each member of the Board of Directors (which board must vote to take action in accordance with its by-laws)).[33]

In the Nueces County Lawsuit, Marty and Berry GP (et al) counterclaimed against Lawrence and the Allen Lawrence Berry (2007) Trust. In the (Marty's / Berry GP's) counter-petition filed on April 15, 2024, Marty / Berry GP defined "Berry-Related Companies" to refer to twenty-nine (29) named companies "and related entities."[34] Berry GP and Gansevoort Investments LLC are expressly named in Marty's / Berry GP's counter-petition filed April 15, 2024 (in Nueces County). Of course, Axis was owned by Gansevoort in 2017 and is owned by Berry GP since 2017, and thus is one of the "Berry-Related Companies."[35] This inclusion of Axis in the Nueces County Lawsuit is further verified by Marty's / Berry GP's legal discovery propounded to Lawrence and the Allen Lawrence Berry (2007) Trust (both previous owners of Axis).[36] Such legal discovery propounded in the Nueces County Lawsuit on May 8, 2024: (1) redefined "Berry-Related Companies" to expressly include "Allen Lawrence Berry 2007

---

[32] See Exhibit 9, at p. 3.
[33] See Exhibit 9, at p. 3.
[34] See Exhibit 10, at p. 5.
[35] See ALB 0007563, subject to Protective Order (transfer of 100% ownership and 100% control of Axis Midstream Holdings LLC from Gansevoort Investments LLC (a Berry-Related Company) to Berry GP Inc. ("Berry GP," a Berry-Related Company) – a transfer that all parties recognize as valid.
[36] See Exhibit 11.

7

Trust" ("Trust"), "Gansevoort Investments LLC," "Axis Midstream Holdings LLC," "Lone Star Ports LLC" ("LSP"), "Midway Junction Properties LLC" ("Midway"), and others.[37] These Nueces County Lawsuit "Berry-Related Companies" (Trust, Gansevoort, Axis, LSP, Midway, along with Berry GP, RBT, and others) are directly involved in the transactions made the subject of Powers' / Allied Port LLC's complaint on file in Harris County, Texas.[38] Moreover, in the Nueces County Lawsuit, tens of thousands of pages of discovery have already been exchange by the parties – and hundreds (perhaps thousands) of pages of documents exchanged are directly related to governance of Gansevoort, Axis LSP, LSPH, and other Berry-Related Companies made the subject of Powers' / Allied Ports LLC's complaints (in Harris County).[39] Additionally, Marty's / Berry GP's attorneys initiated discussions to resolve ownership/control issues relating to Axis this past summer (in the context of the Nueces County Lawsuit);[40] and principals of Axis noticed a formal meeting for Axis Midstream Holdings LLC in Nueces County, Texas, to force discussion and a possible resolution of ownership/control issues relating to Axis.[41] All these efforts were in the context of Axis Midstream Holdings LLC (along with Gansevoort, LSP, Midway, Berry GP, and related companies) being integral to the Nueces County Lawsuit – now also fundamental to these Harris County proceedings.

*Interrelated Disputes ('Identical') –*

---

[37] See Exhibit 11.
[38] See Exhibit 2 (Organizational Chart).
[39] Subject to Protective Order, and available in camera.
[40] See Exhibit 12 (email exchanges between Lawrence's attorneys and Marty's attorneys).
[41] See Exhibit 13 (informal transcription of August 2024, meeting).

8

The threshold question with Plaintiffs' lawsuit queries who owns and controls Axis Midstream Holdings LLC – and related Project assets (including the substantial real property interests held in support of the Project). For reasons detailed above, this begs the question whether Lawrence – alone and without Berry GP's Board of Directors' majority approval – had authority to transfer a $25 million Berry GP asset (Axis) to a third-party (RBT). Separately and additionally, the issue also begs the question of whether Lawrence (the friendly Defendant) – alone and without RBT's Board of Directors' majority approval – had authority to transfer the same $25 million Berry GP asset (Axis) to a third-party (LSPH, purportedly controlled by Plaintiffs who have not invested a penny in the Project for their supposed 'carried interest'). Berry GP (a party to the Nueces County lawsuit) and its $25 million invested in Axis is interrelated with Plaintiffs' lawsuit. In this new Harris County lawsuit is not dismissed, abated, or transferred to Nueces County, Texas, then Berry GP (having invested $25 million in the Project) would be forced to intervene in these Harris County proceedings, despite the Nueces County Lawsuit with Berry GP, et al, being first filed. The Nueces County Lawsuit and this Harris County lawsuit are also interrelated given the two (2) jurisdictions no-existing and competing injunctive relief: (1) Nueces County's Honorable Judge Robert Galvan refused to enjoin the transfer of Berry-Related Companies' real property (after 48 hours' notice), but Harris County's Honorable Judge Laura Redden has enjoined " . . . transferring in any way the ownership [or] property . . . rights of any entity associated with the Project;"[42] and (2) Nueces County's Honorable Judge Robert Galvan refused to enjoin changes in

---

[42] See Exhibit 1 (TRO).

management of Berry-Related Companies,[43] but Harris County's Honorable Judge Laura Redden has enjoined "[h]olding any meetings that in any way seek to affect the management . . . of Axis or any other entity  . . . associated with the Project . . . ."[44]  The Nueces County Lawsuit is all about control of Berry GP and the Berry-Related Companies (including Axis, LSP, Midway, and others) – all companies directly involved in the Project and Powers' / Allied Ports LLC's lawsuit.

## III.
## <u>Jurisdiction</u>

It is rudimentary that two (2) courts cannot possess jurisdiction of the same case or controversy at the same time.

> "Having [first acquired] possession and jurisdiction of the case, that jurisdiction embraced everything in the case, and every question arising which could be determined in it until it reached its termination and the jurisdiction was exhausted. While the jurisdiction [in the first-filed case] lasted it was exclusive, and could not be trenched upon by any other tribunal."[45]

The issue is exhaustively briefed in Movants' Motion to Abate / Plea in Abatement (on file), and all such briefing is hereby incorporated by reference as though fully restated herein. Texas law is quite clear that the jurisdiction of the ***first-filed*** action (now, still pending in Nueces County) is "exclusive," and cannot be "trenched upon by any other tribunal."  For

---

[43] Lawrence TI application requested Marty Berry and Berry GP (and those acting in concert with them) be enjoined from changing management of Berry GP or any of its related entities by removing Lawrence as a director.  Judge Galvan refused the requested relief by ruling: the "Bylaws provide for the removal and appointment of a Board of Director, so I'm not gonna interfere with that."
[44] For documents in support of statements in this paragraph, see footnote nos. 2 – 41, above.
[45] *Cleveland v. Ward, 285 S.W. 1063, 1071 (Tex. 1926).*  For about 100 years, Texas law has remained unchanged. *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245 (Tex. 1988).

literally one hundred (100) years, Texas jurisprudence has shown tremendous respect and given deference to the Texas court first acquiring jurisdiction.

Texas Government Code, Chapter 25A, is also quite adamant about the solemnity of the Business Court's consideration of its own jurisdiction.

> "If the business court does not have jurisdiction of the action, the court shall, at the option of the party filing the action:
> (1) transfer the action to a district court or county court at law in a county of proper venue; or
> (2) dismiss the action without prejudice to the party's rights."
> Texas Government Code, Chapter 25A, section 25A.006(b).[46]

Respectfully, this Business Court, Eleventh Division, is properly guided by the Texas Supreme Court authority cited herein (and additional Texas judicial authority cited and discussed in Movants' Motion to Abate / Plea in Abatement); along with Texas Government Code Chapter 25A. As such, this Business Court "shall" either transfer the action to Nueces County, Texas; or "dismiss the action without prejudice."[47]

## IV.
## Venue

Texas Rule of Civil Procedure ("TRCP") 355(b)(2) requires that Lawrence's Notice of Removal "plead facts to establish . . . venue in a county in an operating division of the business court." Of course, the record demonstrates Lawrence agreed to the transfer of venue of the first-filed lawsuit (the Nueces County Lawsuit),[48] yet now having lost his bid for

---

[46] Compare section 25A.006(d): . . . "If the business court does not have jurisdiction of the action, the business court shall remand the action to the court in which the action was originally filed.
[47] *Cleveland v. Ward, 285 S.W. 1063, 1071 (Tex. 1926); Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245 (Tex. 1988); Texas Government Code, Chapter 25, section 25.006(b).
[48] See Exhibit 8.

injunctive relief in the Nueces County Lawsuit[49] is a 'friendly Defendant'[50] aiding and abetting Powers' / Allied Ports LLC's requests for the same injunctive relief (an attempted mulligan).[51] Lawrence likely hamstrung by his previous agreement to transfer the first-filed case to Nueces County, Movants would show that Lawrence's Notice of Removal fails to "plead facts to establish . . . venue . . . ."[52] Instead, Lawrence merely footnotes by reference the Powers' / Allied Port LLC's petition (which is not a 'pleading of facts to establish venue' by Lawrence).[53] Lawrence has failed to comply with TRCP 355(b)(2), and thus there is no proper pleading upon which venue in the Business Court is established.

Lawrence's Notice of Removal is also procedurally flawed pursuant to Texas Government Code, section 25A.006(e). This provision of law confirms:

> "A party to an action filed in a district court or county court at law
> in a county of proper venue that is not within an operating division
> of the business court or the judge of the court in which the action
> is filed may not remove or transfer the action to the business court."

Lawrence is a "party" to the Nueces County "action filed in a district court . . . in a county of proper venue" (agreed venue in Nueces County) "that is not within an operating division of the business court" (Fifth Business Court Division) . . . "may not remove or transfer the action to the business court." Lawrence's removal of the matter to the Eleventh Business Court Division is expressly prohibited by statute.

---

[49] See Exhibit 9, at p. 3.
[50] See Plaintiffs' Second Amended Petition, at p. 1.
[51] Compare Exhibit 9 (Judge Galvan's ruling on Lawrence's Application for Temporary Injunction) and Exhibit 7, with Exhibit 1 (TRO signed by Judge Redden).
[52] TRCP 355(b)(2).
[53] See Lawrence's Notice of Removal, at p. 6-7 (including footnote 2).

Most importantly, and as set forth in Movants' Motion to Transfer Venue (on file), the only mandatory venue provision applicable to the instant matter requires transfer of the dispute to Nueces County, Texas[54] (even if there were not a first-filed case in Nueces County, Texas – which there is). Movants would show the venue issue has been substantially supported by evidence and briefed with the filing of Movants' Motion to Transfer Venue (on file), and all such evidence and briefing is hereby incorporated by reference as though fully set forth and restated herein.[55] Simply stated: Texas Civil Practice and Remedies Code ("TCPRC") Chapter 15, section 15.011, is a mandatory venue provision requiring transfer of this case to Nueces County, Texas (TCPRC 15.020 being inapplicable because the Powers / Allied Ports LLC contracts in question are not "major transactions"[56]).

Texas Government Code, Chapter 25A, further addresses venue. In pertinent part, section 25A.006(c) states:

> "If, after an action is assigned to a division of the business court, the court determines that the division's geographic territory does not include a county of proper venue for the action, the court shall:
> (1) if an operating division of the court includes a county of proper venue, transfer the action to that division; or
> (2) if there is not an operating division of the court that includes a county of proper venue, at the option of the party filing the action, transfer the action to a district court or county court at law in a county of proper venue.

---

[54] Texas Civil Practice and Remedies Code, section 15.011.
[55] See Exhibit 14 (affidavit of Mike Hummell, with exhibits).
[56] *Hughes v. Pearcy,* No. 03-10-00319-CV, 2014 Tex.App. LEXIS 13059, at *7-8 (Tex.App. – Austin, December 8, 2014, no petition); see also *In re Togs Energy, Inc.,* No. 05-09-01018-CV, 2009 Tex.App. LEXIS 7949, 2009 WL 3260910, at *1 (Tex.App. – Dallas, October 13, 2009, no petition). Further, please note that neither Marty Berry nor Dennis Berry signed any contract with a provision allowing for venue in Harris County, Texas.

As set forth herein, venue is mandatory in Nueces County, Texas. Presently, there is no operating Fifth Business Court Division. As such, this Eleventh Business Court Division may – pursuant to Texas Government Code 25A.006 – transfer the proceeding to Nueces County district court.

## V.
## Conclusion

This dispute is already pending, and has long been pending, in Nueces County, Texas. The precise dispute made the subject of the Nueces County Lawsuit is largely determinative of the Powers / Allied Ports LLC dispute; that is, a resolution of the Berry GP 'power and control' dispute in the Nueces County Lawsuit will resolve the 'power and control' disputes for other Berry-Related Companies; and resolve whether Lawrence had unilateral power to have supposedly transferred Axis out of Berry GP to RBT; and/or out of RFT to LSPH. As such, the first-filed Nueces County Lawsuit is completely interrelated to this Powers / Allied Ports LLC lawsuit. The two (2) cases involve substantially the same parties or parties that can be added (as allowed for per the Texas Supreme Court opinions cited); the two (2) cases involve the identical 'power and control' dispute for Berry GP; the two (2) cases inevitably involve Marty, Bonnie, Lawrence, Berry GP, Axis, LSP, RFT, and Midway (and other Berry-Related Companies); the two (2) cases involve now-active and competing court orders for injunctive relief (Judge Galvan allowing transfer of property, but Judge Redden enjoining it); the two (2) cases involve now-active and competing court orders for other injunctive relief (Judge Galvan allowing change in directors (management), but Judge Redden enjoining it); and more. The cases are interrelated, and thus the jurisdiction of the court in which the first-filed

14

action is pending dominant. Moreover, venue (as previously agreed to by Lawrence, and Marty (et al)) is mandatory in Nueces County.

WHEREFORE, PREMISES CONSIDERED, Movants pray that this Honorable Eleventh Business Court Division remand, dismiss, or transfer venue of the matter as requested herein, and for such other and further relief to which Movants may show themselves justly entitled, both at law and in equity.

Respectfully Submitted,

**LAW OFFICES OF DOUGLAS ALLISON**
403 N. Tancahua Street
Corpus Christi, Texas 78401
T:      361-888-6002
F:      361-888-6651
E:      doug@dallisonlaw.com

BY:      _/s/ Douglas A. Allison_____
**Douglas A. Allison**
State Bar No. 01083500

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing document has been or will be served upon all counsel of record for the parties in accordance with the Texas Rules of Civil Procedure on this the 20th day of November 2024.

/s/ Douglas A. Allison_____
**DOUGLAS A. ALLISON**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kim Brunkenhoefer on behalf of Douglas Allison
Bar No. 1083500
kim@dallisonlaw.com
Envelope ID: 94534970
Filing Code Description: Motions - All Other
Filing Description: 2024.11.20 Movant's Motion to Remand, Dismiss, MTV
Status as of 11/21/2024 8:04 AM CST

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Alistair Dawson | 5596100 | adawson@beckredden.com | 11/20/2024 5:42:06 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 11/20/2024 5:42:06 PM | SENT |

Associated Case Party: Axis Midstream Holdings

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michael Hummell | 10271100 | hummellm@bayltd.com | 11/20/2024 5:42:06 PM | SENT |

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |

Associated Case Party: MarvinGlennBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 11/20/2024 5:42:06 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 11/20/2024 5:42:06 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 11/20/2024 5:42:06 PM | SENT |

Case Contacts

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kim Brunkenhoefer on behalf of Douglas Allison
Bar No. 1083500
kim@dallisonlaw.com
Envelope ID: 94534970
Filing Code Description: Motions - All Other
Filing Description: 2024.11.20 Movant's Motion to Remand, Dismiss, MTV
Status as of 11/21/2024 8:04 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rosa Brennan | | rbrennan@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 11/20/2024 5:42:06 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |

# EXHIBIT 4

E-filed in the Office of the Clerk
for the Business Court of Texas
12/3/2024 11:51 AM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

CAUSE NO. 24-BC11A-0025

| | | |
|---|---|---|
| ALBERT THEODORE POWERS; ALLIED PORTS LLC, | § § § | IN THE BUSINESS COURT |
| *Plaintiffs,* | § § § | |
| v. | § § | ELEVENTH DIVISION |
| AXIS MIDSTREAM HOLDINGS, LLC; ALLEN LAWRENCE BERRY; MARVIN GLENN BERRY; AND BONNIE BERRY, as successor in interest to DENNIS WAYNE BERRY | § § § § § § | |
| *Defendants.* | § § | HARRIS COUNTY, TEXAS |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE AND MOTION TO REMAND/DISMISS/TRANSFER**

**INTRODUCTION**

Defendants Marvin Berry ("Marty") and Bonnie Berry ("Bonnie") have filed a Motion to Transfer Venue ("MTV") and Motion to Remand, Dismiss, and/or Transfer Venue ("MTR") and a Plea in Abatement (the "Motions") all of which ignore the fact that Marty and Bonnie (through her husband Dennis) contractually agreed that exclusive jurisdiction in this case lies ***only*** in Harris County, Texas. Plaintiffs respectfully submit that the most efficient path to resolving the Motions is to enforce the parties' agreement and rule that exclusive jurisdiction for disputes under the Investment Agreement is in Harris County and Harris County only. There are two independent paths to such a conclusion. First, the contractual clause at issue is an enforceable forum selection clause which is presumptively enforceable in Texas and can only be ignored if the party challenging the enforceability of the clause meets an onerous burden of proof which Marty and Bonnie have not met in this case.

1

Alternatively, the clause at issue is a venue selection clause which grants mandatory and exclusive jurisdiction in Harris County for this case, evidence of which Plaintiffs have established by prima facie proof. *See, e.g.*, Tex. R. Civ. P. 87(3)(a); *Sustainable Tex. Oyster Research Mgmt. L.L.C. v. Hannah Reef, Inc.*, 491 S.W.3d 96, 106 (Tex. App.—Houston [1st Dist.] 2016, pet. denied (citing *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993)) (A plaintiff's "prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof."). ***If this Court determines that claims in this lawsuit are subject to either a forum selection clause or an enforceable venue selection clause, then both the Plea in Abatement and the Motion to Transfer Venue must be denied.***

Plaintiffs' claim for an ownership interest in the project that is the subject of this lawsuit is based on an Investment Agreement signed by all parties (the "Investment Agreement."). *See, e.g.*, Plaintiffs' Third Amended Petition at p. 1. The Investment Agreement between these sophisticated parties from separate states includes a provision that *requires* this lawsuit to be brought and litigated *only* in Harris County, Texas and *may not* be brought in Nueces County or any other county. **Ex. 1** at §5(a). In the Agreement, the Berry Defendants not only consented to "exclusive jurisdiction" in Harris County for any suit "seeking to enforce any provision of, or based on any matter arising out of in connection with this Agreement or the transactions contemplated hereby," but they also "**<u>irrevocably waive[d]</u>**, to the fullest extent permitted by relevant law, any objection that may now have or hereafter have to the laying of venue or any of any such suit, action, or proceeding in any such court." **Ex. 1** at § 5(a) (emphasis added). Simply put, the courts in Harris County are the *only* courts where Plaintiffs' claims can be brought. Nueces County does not have jurisdiction over this lawsuit, and Marty and Bonnie waived their right to object to venue in Harris County just as they have attempted to do here.

Aside from that dispositive issue, Marty and Bonnie's venue arguments are unpersuasive and irrelevant, and none lead to mandatory venue in Nueces County. The assertion that "real property" involved with the Lone Star Ports Project at issue in this lawsuit is located in Nueces County is a red herring and, even absent the Investment Agreement, would still not support transfer to Nueces County. Plaintiffs are not seeking to adjudicate any issues involving "real property," and the entity at the center of this lawsuit, Axis Midstream Holdings, LLC, does not own any real property in Nueces County. Similarly, Lawrence Berry is not "sham" defendant, as the relief Plaintiffs seek applies equally to him as it does to the other Berry Defendants.

Regardless, Nueces County is not a county of proper venue that (1) is within another operating business court division or (2) a county of proper venue that would be considered "at the option of the party filing the action." *Id.* at § 25.006A(c). If this Court determines that it does not have jurisdiction or that venue is not proper in Harris County, then the Plaintiffs get to pick which county this case should be transferred to and the Plaintiffs do not select Nueces County.[1] Finally, transfer for convenience is not appropriate when a forum selection clause or mandatory venue applies, and Marty and Bonnie woefully failed to meet their burden anyway. Defendants' Motions should be denied.

---

[1] If the Court determines that this case should be transferred to another court, Plaintiffs suggest that it be transferred to the Business Court in San Antonio. One of the entities involved in the Project that is the subject of this lawsuit owns property in San Patricio County, which is within the jurisdiction of the Fourth Business Court Division in San Antonio. Tex. Gov't Code § 25A.003(f); *id.* at § 74.042(e); *see also* MTR at Ex. 14, Hummell Affidavit at ¶ 3 ("The Midway to Harbor Island Project that is the subject of the TRO in the above-referenced litigation is located entirely in San Patricio and Nueces Counties.").

**ARGUMENT AND AUTHORITIES[2]**

I. **The parties agreed to "exclusive jurisdiction" in Harris County in a mandatory forum selection clause.**

While Marty and Bonnie have attempted to create several different smokescreens over jurisdiction and venue over this action, at bottom both are straightforward. In the Investment Agreement, Powers and the Berry Defendants agreed to "**exclusive jurisdiction**" "**in the state or federal courts in Harris County, Texas"** for suits "seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort or otherwise… so long as one of such courts shall have subject-matter jurisdiction[3] over such suit[.]" **Ex. 1** at §5(a) (emphasis added). Moreover, the Berry Defendants agreed to "irrevocably waive[], to the fullest extent permitted by relevant law, **any objection** that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding or that any such suit, action, or proceeding which is in any such court has been brought in an inconvenient forum." *Id.* (emphasis added). A full copy of the provision is reproduced below for convenience:

---

[2] Plaintiffs' Verified Third Amended Petition contains a fulsome recitation of the facts applicable to this action, and Plaintiffs' Response to Marty's Plea in Abatement contains a condensed factual background. The facts relevant to venue are referenced through this section and supported by the Declaration of Plaintiff Albert Theodore Powers attached as **Exhibit 10**.

[3] The Court's subject matter jurisdiction can be plainly derived from Tex. Gov't Code § 25A.004(d), as this action involves a "qualified transaction"[3] with an amount in controversy of more than $10,000,000. *See, e.g.*, Plaintiffs' Third Am. Pet. at ¶ 8, 13; *see also* Defendant Lawrence Berry's Notice of Removal. The Motion to Remand is not based on an assertion that this Court lacks subject matter jurisdiction. Rather, it is based on assertions that there were procedural defects in the removal to this Court. Those defects are being addressed by Lawrence Berry as the removing party.

> (a) **Governing Law, Jurisdiction, and Venue**. This Agreement and all issues and questions concerning its application, construction, validity, interpretation, and enforcement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to any choice or conflict of laws provisions or rules (whether of the State of Texas or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Texas. Powers and each of the Berrys hereby agrees that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the state or federal courts in Harris County, Texas, so long as one of such courts shall have subject-matter jurisdiction over such suit, action, or proceeding, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Texas. Powers and each of the Berrys hereby irrevocably consents to the exclusive jurisdiction of such courts and of the appropriate appellate courts therefrom in any such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by relevant law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding which is brought in any such court has been brought in an inconvenient forum.

Despite their agreement, Marty and Bonnie are now ignoring that Harris County has "exclusive jurisdiction" and seeking to object to venue that they "irrevocably waive[d]." As set forth further below, the Court should hold them to their agreement.

**A.      The forum selection clause is valid and enforceable.**

In Texas, forum selection clauses are "presumptively valid." *See, e.g.*, *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010). "A trial court abuses its discretion in refusing to enforce the clause unless the party opposing enforcement clearly shows (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit is brought, or (4) the selected forum would be seriously inconvenient for trial." *Id*. Notably, the "burden of proof

5

is heavy for the party challenging enforcement." *Id*. And in this case, Marty and Bonnie can come nowhere close to meeting their burden of proof.

"The enforcement of valid forum-selection clauses, bargained for by the parties, protects the parties 'legitimate expectations' and furthers 'the vital interests of the justice system,' such as sparing litigants the time and expense of pretrial motions to determine the proper forum for disputes." *See, e.g.*, *In re Agresti*, 2014 WL 3408691, at *3 (Tex. App.—Corpus Christi May 29, 2014, mand. denied) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991). Not surprisingly, Texas courts have routinely enforced and construed contractual provisions as "forum selection clauses" that, like this one, provide "exclusive jurisdiction" to certain enumerated courts:

- *In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 558 (Tex. 2004) ("The parties hereto consent to the **exclusive jurisdiction** of the courts of Montgomery County, Pennsylvania.") (emphasis added);

- *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 230-31 ("AGREE TO SUBMIT FOR THEMSELVES, IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND ANY SCHEDULE OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT HEREOF OR THEREOF, TO THE **EXCLUSIVE JURISDICTION** OF THE COURTS OF THE COMMONWEALTH [sic] OF PENNSYLVANIA, THE COURTS OF THE UNITED STATES OF AMERICA FOR THE COMMONWEALTH OF PENNSYLVANIA, AND APPELLATE COURTS FROM ANY THEREOF, (B) CONSENT THAT ANY ACTION OR PROCEEDING SHALL BE BROUGHT IN SUCH COURTS, AND WAIVE ANY OBJECTION THAT EACH MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING IN ANY SUCH COURT") (capitals in original) (emphasis added);

- *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 674 (Tex. 2009) ("It is agreed that **exclusive jurisdiction** and venue shall vest in the Nineteenth Judicial District of Lake County, Illinois, Illinois law applying.") (emphasis added).

- *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 434 (Tex. 2017) ("[T]he Delaware state courts of Wilmington, Delaware (or, if there is exclusive federal jurisdiction, the United States District Court for the District of Delaware) shall have **exclusive jurisdiction** and venue over any dispute arising out of this Agreement, and the parties hereby consent to the jurisdiction of such courts.") (emphasis added).

6

- *Rieder v. Woods*, 603 S.W.3d 86, 90 (Tex. 2022) ("ANY CLAIMS OR CONTROVERSIES UNDER OR RELATED TO THIS AGREEMENT SHALL BE **EXCLUSIVELY** DETERMINED IN THE STATE AND/OR FEDERAL COURTS LOCATED IN TARRANT COUNTY, TEXAS, TO WHOSE **JURISDICTION** EACH PARTY IRREVOCABLY CONSENTS.") (capitals in original) (emphasis added).

Texas appellate courts have done the same:

- *Deep Water Slender Wells, Ltd. v. Shell Int'l Explor. & Prod., Inc.*, 234 S.W.3d 679, 683-84 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("the parties irrevocably agree that the courts of The Hague, The Netherlands shall have **exclusive jurisdiction** to resolve any controversy or claim of whatever nature arising out of or relating to the Consulting Agreement or breach thereof") (emphasis added);

- *In re Counsel Fin. Servs., L.L.C.*, 2013 WL 3895317, at *1 (Tex. App.—Corpus Christi, Jul. 25, 2013, no pet.) ("BORROWER HEREBY CONSENTS AND AGREES THAT ANY FEDERAL OR STATE COURT LOCATED IN ERIE COUNTY, NEW YORK, SHALL HAVE **EXCLUSIVE JURISDICTION** TO HEAR AND DETERMINE ANY CLAIMS AND DISPUTES BETWEEN BORROWER AND HOLDER PERTAINING TO THIS NOTE OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS NOTE…") (capitals in original) (emphasis added);

- *Loya v. Loya*, 507 S.W.3d 871, 874 (Tex. App.—Houston [1st Dist.] 2016, mand. denied) ("Any dispute arising out of or [i]n connection with this Agreement or the breach, termination or invalidity thereof shall be submitted **exclusively** to the **jurisdiction** of the courts of Rotterdam, the Netherlands.") (emphasis added);

- *Xia v. Floyd*, 638 S.W.3d 821, 824 (Tex. App.—Fort Worth 2021, no pet.) ("such action shall be filed exclusively in the courts of the State of California or of the United States of America located in the counties of ... Orange or Los Angeles, as selected by the Member that is the plaintiff in the actions, or that initiates the proceeding or arbitration. Each Member agrees not to commence any action, suit or other proceeding arising from, relating to, or in connection with this Agreement except in such a court and each Member irrevocably and unconditionally consents and submits to the personal and **exclusive jurisdiction** of such courts for the purposes of litigating any such actions, and hereby grants jurisdiction to such courts…") (emphasis added);

- *In re Apex Tool Group*, 2024 WL 969735, at *3 (Tex. App.—Houston [1st Dist.] Mar. 7, 2024, no pet.) ("[e]ach party irrevocably submits to the **exclusive jurisdiction** and venue of the federal and state courts located in the County of Mecklenburg, North Carolina in any legal suit, action or proceeding...") (emphasis added).

Section 5(a) is no different than the forum selection clauses addressed in the cases cited above. Under Texas law, Section 5(a) is a forum selection clause that is presumptively valid, and the Court has not been provided with evidence to invalidate this clause. Accordingly, the Court should rule that Section 5(a) constitutes a mandatory forum selection clause and deny Marty and Bonnie's Motions.

**B. Marty and Bonnie (through Dennis) signed the Investment Agreement containing the forum selection clause.**

Marty and Bonnie have not provided the Court with any evidence to meet the heavy burden of invalidating the forum selection clause to which they contractually agreed. The best they could do to date is claim that neither Marty nor Dennis signed the Investment Agreement. This is easily rejected, as the Investment Agreement is fully executed by all four parties—Lawrence, Marty, Dennis and Powers (**Ex. 1**; *see also* **Ex. 10** at ¶ 5 ("I witnessed Marty Berry and Dennis Berry execute the Agreements at the Berry GP office in Corpus Christi, Texas; I have an original Investment Agreement signed in ink by all parties."):



ALLEN LAWRENCE BERRY

MARVIN GLEN BERRY



DENNIS WAYNE BERRY

ALBERT THEODORE POWERS

Having established the existence of a signed written contract with prima facie evidence sufficient to meet Plaintiffs' burden of proof in a venue challenge, Marty and Bonnie are not permitted to challenge, rebut or try and disprove the existence of a signed written Investment Agreement. Tex. R. Civ. P. 87(3)(a) ("Prima facie proof is made when the venue facts are properly pleaded and an

affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting each pleading."). This proof, at the motion to transfer stage, "is not subject to rebuttal, cross-examination, impeachment, or disproof." *See, e.g., Hannah Reef, Inc.*, 491 at 106 (citing *Ruiz*, 868 at 757).

Moreover, this is not the first time that parties to a signed contract have attempted to deny they signed in order to avoid a mandatory forum. In *Aerotek v. Boyd*, 624 S.W.3d 199, 202 (Tex. 2021), a group of employees filed declarations denying they electronically signed an arbitration agreement associated with their employment documents. The court noted, relevant here, that for "a paper document with a handwritten, wet-ink signature, the genuineness of a signature can be proved by direct evidence—for example, testimony by an eye witness,[4] a witness familiar with the signatory's handwriting, or an expert who has compared the signature against a genuine specimen." *Id.* at 204-05. But the court went further, finding that the employees did not present evidence that demonstrated "how their electronic signatures could have wound up on [the agreement] without their having placed them there themselves." *Id.* at 209. The court put it bluntly—"[m]ere denials do not suffice." *Id.* "Evidence cannot be disregarded when it demonstrates physical facts that cannot be denied, so that reasonable people could differ in their conclusions." *Id.* The court accordingly reversed and compelled the employees' claims to arbitration. *Id.* at 210.

Similarly, in *Knox Waste Serv., LLC v. Sherman*, 2021 WL 4470876, at *8 (Tex. App.—Eastland Sept. 30, 2021, no pet.), a party seeking to avoid an arbitration agreement filed an affidavit claiming that "he did not sign the document." The court rejected this assertion, stating that "a mere denial by the [party] that he did not sign the agreement, without more, fails to create

---

[4] As noted above, Plaintiff Powers witnessed both Marty and Dennis sign both the Investment Agreement and Agreement at issue. **Ex. 10** at ¶ 5.

a genuine issue of material fact." *Id*. The court accordingly reversed the trial court and compelled the action to arbitration—the required forum for disputes within the agreement's scope. *Id.* at 10.

Moreover, the conduct of both Powers and the Berry Defendants is consistent with both the Investment Agreement and the Agreement being signed by all parties. For example, the Berry Defendants paid Powers compensation and expenses totaling over $2 million dollars. **Ex. 10** at ¶¶ 6-7. At the Berry Defendants' request, the compensation portion of the Agreement was terminated, which was memorialized in a letter and email discussion. *Id.* at ¶ 6; *see also* **Ex. 3**; **Ex. 4**. If there was no signed agreement, why send a letter terminating the compensation portion of the agreement in 90 days according to that Agreement's terms? And perhaps more importantly, why agree to keep paying Mr. Powers' expenses? *Id.* Because all parties understood that the Investment Agreement and Agreement had been signed by all parties and were enforceable contracts.

That same month, Mr. Powers sent Marty and Dennis a proposed structure for the Project that plainly showed Mr. Powers' 20% interest (i.e., "ATP") at the ownership level (**Ex. 5**) – which is consistent with the terms of the signed Investment Agreement:



None of the Berry Defendants objected or otherwise claimed that Mr. Powers did not have any ownership interest. **Ex. 10** at ¶ 8. Nor did the Berry Defendants object when Mr. Powers sent transfer documents and operating agreements for entities involved in the Project to Energy Capital Partners—a potential investor in the Project. *Id.*; **Ex. 6, 7**. Nor did the Berry Defendants object or claim Mr. Powers did not have an interest when he sent an organizational chart showing "the

structure currently being discussed with ECP" with his company, Plaintiff Allied Ports, LLC listed at the ownership level. *Id.* at ¶ 9; **Ex. 8**.



Again, not only is the evidence that all parties signed the contract overwhelming, the parties' conduct is consistent with the terms of the Investment Agreement. When parties contend that there is a signed contract and the parties' conduct is consistent with the terms of the alleged signed contract, the court may infer that the parties agreed to the terms. *See, e.g.*, *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 718 (Tex. App.—Houston [1st Dist. 2020], no pet.) (cleaned up) ("A party's intent to be bound by a contract may be evidenced by its conduct at the time a contract is drafted and by its subsequent conduct reflecting that it was acting in accordance with the terms of the contract."); *see also Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 168 (Tex. App.—El Paso 2015, no pet.) ("In the absence of a signature on a contract, a court may look to other evidence to establish the parties' assent to the terms of the contract," which "includes the party's conduct.").

The reality is that Marty and Dennis (now Bonnie) do not have evidence that they did not sign the Investment Agreement and instead the evidence establishes that they did. Indeed, Marty and Bonnie have significantly less evidence than that present in *Aerotek* or *Knox*. They have no real evidence at all. They did not even file a verified pleading denying execution as required by the Rules. Tex. R. Civ. P. 93.7. With all the contrary evidence, little wonder why. As in *Aerotek* and *Knox*, the Court should reject Marty and Bonnie's manufactured attempt to avoid the forum selection required by the Investment Agreement.

As such, the Court should rule that Section 5(a) of the Investment Agreement is a mandatory forum selection clause and enforce the parties' agreement. Doing so moots Marty and Bonnie's remaining jurisdictional and venue issues.

## II. If Section 5(a) is a "venue clause" the Investment Agreement is "major transaction" requiring mandatory venue in Harris County.

### A. Plaintiffs do not believe that Section 5(a) is a "venue clause."

Plaintiffs do not believe that Section 5(a) can reasonably be construed as a mere venue selection clause—that would contravene the plain meaning of the parties' agreement. *Burlington Res. Oil & Gas Co. LP v. Tex. Crude Energy, LLC*, 573 S.EW.3d 198, 202-03 ("The Court's task is to ascertain the true intentions of the parties as expressed in the writing itself."). Indeed, venue "*does not* refer to any grant or restriction of subject-matter jurisdiction providing for a civil action to be adjudicated only by the district court for a particular district or districts." 28 U.S.C. § 1390(a); *see Velasco v. Tex. Kenworth Co.*, 144 S.W.3d 632, 635 (Tex. App.—Dallas 2004, pet. denied) (recognizing that Texas's venue statute "appears to have been patterned after a federal venue statute" and looking to "federal cases to guide our interpretation of the [Texas] statute"); *Summers v. WellTech, Inc.*, 935 S.W.2d 228, 232–33 (Tex. App.—Houston [1st Dist.] 1996, no writ.) ("The similar wording in the federal and state statutes allows us to look to federal cases as a guide to interpreting th[e] [state] statute."). Thus, construing Section 5(a) merely as selecting venue (rather than as a mandatory forum selection clause) would effectively nullify the parties' agreement to vest "exclusive jurisdiction" in the state and federal courts in Harris County, Texas. Otherwise, this language would be rendered meaningless. *See Burlington*, 573 S.W.3d at 203 ("We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.") (quotation omitted).

Accordingly, Plaintiffs submit that this Court should rule that Section 5(a) is a forum selection clause.

**B.      If Section 5(a) is a venue clause, venue is mandatory in Harris County under Tex. Civ. Prac. And Rem. Code Section 15.020.**

If this Court determines that Section 5(a) is a "venue clause," then venue is mandatory in Harris County because the Investment Agreement qualifies as a "major transaction" under Tex. Civ. Prac. & Rem. Code § 15.020. Under that provision, if any party to an agreement is to receive greater than $1 million, then venue is mandatory in the county selected by the parties to the agreement. *Id.* at 15.020(a).

Marty and Bonnie argue that the Investment Agreement—which forms the underlying basis for a state of the art crude oil terminal project in Nueces and San Patricio counties (the "Project")—does not qualify as a "major transaction" and instead only reflects a $5,000 contribution payment. MTV at pp. 2-3. This is nonsensical and contrary to the plain text of the Investment Agreement. Even if Section 5(a) of the Investment Agreement was merely a venue selection clause (it is not), it is plainly a "major transaction,"[5] for which venue is mandatory in Harris County. Tex. Civ. Prac. & Rem. Code 15.020(b) ("An action arising from a major transaction ***shall be brought*** in a county if the party against whom the action is brought has agreed in writing that a suit arising from the transaction may be brought in that county.") (emphasis added); *see also* Tex. Gov. Code § 25A.015 ("A jury trial for a case in which a written contract specifies a county as venue shall be held in that county.").

---

[5] "[M]ajor transaction" means a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million. Tex. Civ. Prac. & Rem. Code § 15.020(a).

Indeed, Marty and Bonnie either ignore or fail to consider what they, under the plain text, are "entitled to receive" under the Investment Agreement. Tex. Civ. Prac. & Rem. Code § 15.020(a). The Agreement entitles Plaintiffs to receive as consideration a 20% interest in the Project, while the Berry Defendants receive as consideration "priority distributions to the Berrys or their designees of Two Hundred Fifty Million United States Dollars ($250,000,000) plus a ten percent (10%) cumulative preferred return on the outstanding balance of such amount." **Ex. 1** at § 2. On the face of the Investment Agreement, the Berry Defendants are "entitled to receive" as consideration for Plaintiffs' interest far more than the $1,000,000 "major transaction" threshold under the Agreement. *See id.*; *see also* **Ex. 10** at ¶ 6.

To be sure, this is consistent with other documents associated with the Investment Agreement. *See SM Energy Co. v. Union Pac. R.R. Co.*, 652 S.W.3d 830, 840 (Tex. App.—Eastland 2023, pet. denied) (considering other documents related to the agreement at issue to determine whether a transaction was a "major transaction"). The Investment Agreement discusses "another Agreement" as part of this transaction that "appoint[ed] Powers as [the Berry's] representative and chief negotiator for the financing for the Project." **Ex. 1** at p. 1; *see also* **Ex. 2** at § 1. The Agreement being referred to is the compensation agreement entitled "Agreement" which was executed at the same time as the Investment Agreement (referred to herein as the "Agreement"). Under the Agreement, the Berry Defendants paid Powers more than $1,000,000 in compensation and reimbursed expenses. **Ex. 2** at § 3; *see also* **Ex. 10** at ¶ 7 ("For my performance of the Agreements and work on the Project, the Berry Defendants have paid to me and I have received a total $2,051,421.99.").

Moreover, in February 2019, a well-respected private equity firm, the Carlyle Group, valued the Berry Defendants' interest in the Project at "no less than $400,000,000." **Ex. 9** at p. 7;

14

*see also* **Ex. 4** at p. 2 ($400,000,000 value assigned to Berry Defendants' interest). And at a hearing just days ago, Defendants' counsel admitted[6] the transaction described in the Agreement "is literally a billion dollar project." **Ex. 10** at p. 4. Even at the more conservative $400,000,000 estimate, Plaintiffs' 20% interest is worth $80,000,000. *See, e.g.* Plaintiffs' Third Am. Pet. at ¶ 14. Marty and Bonnie cannot deny the transaction's "billion dollar" value to avoid venue now. *Fleming*, 669 S.W.3d at 461 ("As long as the statement stands unretracted, it must be taken as true by the court and jury; it is binding on the declarant and he cannot introduce evidence to contradict it.").

Marty and Bonnie's cited authorities are inapplicable here. In *In re Togs Energy, Inc.*, for instance, there was <u>no</u> <u>language</u> stating the value of the consideration each party was entitled to receive at all. 2009 WL 3260910, at *1 (Tex. App.—Dallas Oct. 13, 2009, no pet.). And similarly, in *Hughes v. Pearcy*, the contract did not expressly state that one party or the other was "entitled to receive" more than $1 million as a condition or consideration in the contract. *See* 2014 WL 7014353, at *3 (Tex. App.—Austin, Dec. 8, 2014, pet. denied). Quite the opposite—one party to the contract had control over the amount of payments to the other. *Id*. Here, by contrast, the Agreement plainly and expressly states that the Berry Defendants are entitled to receive over $250,000,000 as a result of Plaintiffs' work that is covered by and the subject of the Investment Agreement. And unlike in *Pearcy*, Plaintiff Powers did actually receive more than $1 million dollars in consideration for his performance. **Ex. 10** at ¶ 7.

---

[6] "A judicial admission is a clear, deliberate, and unequivocal assertion of fact which conclusively disproves a right of recovery or a defense and makes the introduction of other evidence on an issue unnecessary." *See, e.g.*, *Wilson v. Fleming*, 669 S.W.3d 450, 461 (Tex. App.—Houston [14th Dist.] 2021, pet. *granted on other grounds*, 694 S.W.3d 186). To constitute a judicial admission, the statement must be: (1) made in the course of a judicial proceeding; (2) contrary to a fact essential for the party's recovery or defense; (3) deliberate, clear, and unequivocal; (4) in accordance with public policy if given conclusive effect; and (5) consistent with the opposing party's theory of recovery. *Id.* "A party's pleadings or **a counsel's factual statements** on behalf of a client may constitute judicial admissions." *Id.* (emphasis added).

As set forth in Section 1 above, Plaintiffs' respectfully submit that the Investment Agreement contains a forum selection clause that is presumptively enforceable and for which Marty and Bonnie have not met their heavy burden to show it should not be enforced or why the Court should not enforce their agreement to "irrevocably waive[]" objections to venue. Regardless, Plaintiffs' the signed Investment Agreement, Powers' declaration, and other supporting evidence cited herein, at this stage, meets the required prima facie proof standard applicable to motions to transfer venue.[7] Tex. R. Civ. P. 87(3)(a) ("When a venue fact is specifically denied, the party pleading the venue fact must make prima facie proof of that venue fact."); *see, e.g.*, *Hannah Reef, Inc.*, 491 at 106 (citing *Ruiz*, 868 at 757) (A plaintiff's "prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof.").

This action arose to "enforce" the Agreement due to Defendants' disregard for their obligations. Marty and Bonnie should not be allowed to flout their agreement to exclusive venue in Harris County the same way they have treated their other obligations under the Investment Agreement. The Court should enforce the Agreement, which moots the remaining jurisdictional[8] and venue issues.

### III. Venue over real property is inapplicable and irrelevant to this action.

If the Court enforces the forum selection clause or finds venue under the "major transaction" statute as set forth above, it need not go further. Nonetheless, Marty and Bonnie claim in both Motions that Tex. Civ. Prac. & Rem. Code § 15.011—a venue provision related to disputes

---

[7] "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." Tex. R. Civ. P. 87(3)(a).

[8] Plaintiffs are simultaneously filing a Response to the Plea in Abatement in which Marty and Bonnie assert that the case filed in Nueces County has dominant jurisdiction over this case. As discussed more fully in the response to the Plea in Abatement, because mandatory and exclusive jurisdiction is only in Harris County – and this case cannot be brought in or transferred to Nueces County—dominant jurisdiction does not apply.

over <u>real</u> <u>property</u>—should be applied to this case. This is wrong for several reasons. First, "exclusive jurisdiction" lies in Harris County under the mandatory forum selection clause. Second, as a matter of law, the major transaction statute trumps other mandatory venue provisions in Chapter 15 (i.e., Title 2). *See, e.g.*, *In re Fisher*, 433 S.W.3d 523, 534 (Tex. 2014). There, the Supreme Court held that section 15.020 applies "to an action arising from a major transaction '[n]otwithstanding any other provision in this title,' indicating "that the Legislature intended for it to control over other mandatory venue provisions." *Id*.; *see also In re Fox River Real Estate Holdings, LLC*, 596 S.W.3d 759, 768 (Tex. 2020) ("[W]e clarify that section 15.020 means what it says and indicates that the Legislature intended for it to control over other venue provisions within Title 2."). Plaintiffs' claims cannot be brought in another venue because the Investment Agreement *requires* they be brought in Harris County and *cannot* be brought in Nueces County. Tex. Civ. Prac. & Rem. Code § 15.020(c)(2) ("Notwithstanding any other provision of this title, an action arising from a major transaction may not be brought in a county if: the party bringing the action has agreed in writing that an action arising from the transaction must be brought in another county of this state or in another jurisdiction, and the action may be brought in that other county, under this section or otherwise, or in that other jurisdiction.").

Even so, this case has nothing to do with real property in Nueces County or anywhere else. The entity at issue in this case—Axis Midstream Holdings, LLC—owns no real property in Nueces County. In their MTR, Marty and Bonnie ramble through several merits-related questions regarding the transfer of interest of Axis amongst various non-party companies and Lawrence's authority to do so in an attempt to muddy the water. MTR at pp. 4-5. But these facts are not relevant to the venue standard nor do they change the result (nor are they correct in any event), as Plaintiffs have (1) sought enforcement of the forum selection clause between the parties and (2)

alternatively provided "prima facie proof" as required to support their venue allegations. Tex. R. Civ. P. 87(3). Moreover, Marty and Bonnie misconstrue the relief sought by Plaintiffs. The relief Plaintiffs seek can be summed up simply—follow the Investment Agreement for Plaintiffs' ownership and do not do anything to steal it. *See generally* Plaintiff's Third Am. Pet. This case is about Plaintiffs' ownership interest in the <u>Project</u> and Defendants' attempt to steal it—not title of or possession of a piece of <u>property</u> owned by other entities in Nueces County.

## IV. Marty and Bonnie's remaining assertions for transfer have no merit.

Marty and Bonnie devote a collective page in their MTV to assert that "none of the acts" underlying the Plaintiffs' TRO or claims occurred in Harris County, that Lawrence Berry is a "sham defendant," and that the case should be transferred "for convenience." Each of these kitchen-sink style arguments (1) do not affect the application of the forum selection clause, (2) do not affect the application of the major transaction statute, and (3) are easily rebutted by prima facie proof and can be quickly rejected.

A few examples make the point. First, Marty and Bonnie purport to "specifically deny all Plaintiffs' venue allegations," and that "none of the acts giving rise to the TRO or claims occurred in Harris County. Motion at p. 3. This misses the point, as many "events and omissions" giving rise to Plaintiff's contractual claims and work on the Project occurred in Harris County, Texas. *See, e.g.*, **Ex. 10 at ¶¶** 2, 7. Marty and Bonnie cannot and do not provide any proof to rebut that the initial framework for the Agreement was negotiated in Houston, Texas. Third Am. Pet. at ¶ 11; **Ex. 10** at ¶ 2. They provide no proof to rebut the several Houston, Texas meetings where the underlying agreement at issue was confirmed and significant details about the Project were discussed. Third Am. Pet. at ¶¶ 12, 14; **Ex. 10** at ¶¶ 2, 7. They provide no proof to rebut that

Plaintiff Powers spent most of his time working on the project in Houston, Texas—in an apartment paid for by the Berry Defendants no less. Third Am. Pet. at ¶ 14; **Ex. 10** at ¶ 7.

Second, Marty and Bonnie baldly assert that Lawrence is a "sham defendant." Though again irrelevant to venue under the major transaction statute, this is simply not true. The declarations, breach of contract cause of action, TRO and Temporary Injunction application sought by Plaintiffs apply equally to *all* of the defendants. That Lawrence correctly admits that he signed the *fully executed* Agreement at issue does not make him a "sham defendant"—it makes him honest. And if it were necessary to reach additional venue bases (it is not), Lawrence's residence in Harris County serves as a basis for proper venue in this dispute. Tex. Civ. Prac. & Rem. Code § 15.002(2).

Finally, Marty and Bonnie assert that this action should be transferred "for convenience" to Nueces County. As a matter of law, "convenience" cannot trump a mandatory forum selection clause or a venue provision like the major transaction statute. *See, e.g.*, *In re Fisher*, 433 S.W.3d 523, 534 (Tex. 2014). Even if it could, Marty and Bonnie come nowhere close to meet their burden to transfer and do not even cite any evidence to support their allegations. *See* Motion at p. 4.

**V. Regardless, Nueces County is not a proper transferee court.**

Based on the above, the Court can deny Marty and Bonnie's Motion without further analysis. However, Plaintiffs wish to briefly address Marty and Bonnie's assertions that this Court can or should "remand" the case or transfer to Nueces County based on the Government Code. First, Mary and Bonnie's procedural complaints about the removal have no merit and are dependent on their misguided and wrong arguments on jurisdiction and venue. But even if this Court does not have jurisdiction after removal, this Court should transfer this case to the Business Court in San Antonio. The Code provides:

19

(c) "If, after an action is assigned to a division of the business court, the court determines that the division's geographic territory does not include a county of proper venue, the court shall:

  (1) if an operating division of the court includes a county of proper venue, transfer the action to that division; or

  (2) if there is not an operating division of the court that includes a county of proper venue, <u>at the option of the party filing the action</u>, transfer the action to a district court or county court at law in a county of proper venue.

Tex. Gov. Code §25A.006 (emphasis added).

Under 25A.006(c)(1), the case would not be transferred to Nueces County as Marty and Bonnie seek. Even if Marty and Bonnie's argument regarding the import of other parties' real property were accepted as relevant and dispositive (it is not), it is undisputed that there is real property involved with the Lone Star Ports Projects in San Patricio County, which is part of the Fourth Business Court Division. Tex. Gov't Code § 25A.003(f); *id.* at § 74.042(e); *see also* MTR at Ex. 14, Hummell Affidavit at ¶ 3 ("The Midway to Harbor Island Project that is the subject of the TRO in the above-referenced litigation is located entirely in San Patricio and Nueces Counties."). Nueces County does not fall within an established Business Court division and accordingly would not be available as a venue under 25A.006(c)(1).

Nor would the case be properly transferred to Nueces County under 25A.006(c)(2). Because there is not an operating division in Nueces County, any transfer would be to a county of proper venue "at the option of the party filing the action." Tex. Gov't Code § 25.006(c)(2). Plaintiffs do not agree that Nueces County is a county of mandatory venue or proper venue. Plaintiffs would not request this Court transfer this action to Nueces County. Instead, if the Court determines that transfer is required, Plaintiffs would request a transfer to the Business Court in San Antonio.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant's Motion to Transfer Venue and grant any further relief to which Plaintiffs are entitled.

DATED: December 3, 2024               Respectfully submitted,

*/s/ Alistair B. Dawson*
Alistair B. Dawson
State Bar No. 05596100
M. Jake McClellan
State Bar No. 24109525
Madeline E. Gay
State Bar No. 24138681
E-mail: adawson@beckredden.com
E-mail: jmcclellan@beckredden.com
E-mail: mgay@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:    (713) 951-3700
Telecopier:    (713) 951-3720

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was served on counsel of record in this matter in accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure on this 3rd day of December, 2024.

*/s/ M. Jake McClellan*
M. Jake McClellan

| ALBERT THEODORE POWERS; | § | IN THE BUSINESS COURT |
| ALLIED PORTS LLC, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | ELEVENTH DIVISION |
| | § | |
| AXIS MIDSTREAM HOLDINGS, | § | |
| LLC; ALLEN LAWRENCE BERRY; | § | |
| MARVIN GLENN BERRY; AND | § | |
| BONNIE BERRY, as successor in | § | |
| interest to DENNIS WAYNE BERRY | § | |
| | § | |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

## TABLE OF CONTENTS

| Exhibit Number | Description | Page Number |
|---|---|---|
| 1 | Investment Agreement | 23 |
| 2 | Agreement | 33 |
| 3 | Letter regarding Agreement dated January 30, 2020 | 41 |
| 4 | Email regarding Agreement dated February 3, 2020 | 45 |
| 5 | Email regarding Project Structure dated May 9, 2019 | 49 |
| 6 | Email regarding Interest Transfers dated April 23, 2020 | 55 |
| 7 | Email regarding Operating Agreements dated April 23, 2020 | 68 |
| 8 | Email regarding Project Structure dated May 13, 2020 | 315 |
| 9 | Executed Carlyle Group Term Sheet dated February 7, 2019 | 318 |

| 10 | Transcript of Hearing on Plaintiffs' Motion for Temporary Injunction dated November 12, 2024 | 335 |
|----|----|----|
| 11 | Declaration of Albert Theodore Powers | 365 |

# EXHIBIT 5

E-filed in the Office of the Clerk
for the Business Court of Texas
1/27/2025 4:48 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

CAUSE NO. 24-BC11A-0025

| | | |
|---|---|---|
| **ALBERT THEODORE POWERS and** | § | **IN THE BUSINESS COURT** |
| **ALLIED PORTS LLC** | § | |
| | § | |
| **v.** | § | |
| | § | **11A – STATE OF TEXAS** |
| **AXIS MISTREAM HOLDINGS, LLC,** | § | |
| **ALLEN LAWRENCE BERRY,** | § | |
| **MARVIN GLENN BERRY, and** | § | |
| **BONNIE BERRY, as successor in interest to** | § | |
| **DENNIS WAYNE BERRY** | § | **HONORABLE SOFIA ADROGUE** |

**MOTION TO RECONSIDER COURT'S RULING ON PLEA IN ABATEMENT**

**MOTION TO STAY PENDING MANDAMUS**

NOW COMES Martin Glynn Berry ("Marty), Bonnie Berry ("Bonnie), and Axis Midstream Holdings LLC ("Axis"), together "Movants", and make and file this Motion to Reconsider Court's Ruling on Plea in Abatement ("Motion") and, in the alternative, Motion to Stay Pending Mandamus, and in support of same would show:

**I.**

**PROCEDURAL HISTORY**

On October 31, 2024, Albert Theodore ("Ted") Powers and Allied Ports LLC ("Allied Ports") filed their Original Petition and Application for a Temporary Restraining Order and Temporary Injunction ("Plaintiffs' Original Petition"). On November 8, 2024, Marty and Bonnie filed a Motion to Transfer Venue ("Motion to Transfer") and Plea in Abatement/Motion to

1

Abatement ("Motion to Abate").[1]  On January 17, 2025, the Court signed a court order ("Order") denying the Motions.  Marty, Bonnie, and Axis now file this Motion to Reconsider Court's Ruling on Plea in Abatement ("Motion").

## II.

## RECENT EVENTS

Recent events reveal that this Plaintiffs' lawsuit (the "Harris County Lawsuit") and the "Nueces County Lawsuit" (*Lawrence Berry, et al v. Berry GP, et al,* pending in the 94th Judicial District Court, Nueces County, Texas (filed a year before the Harris County Lawsuit)) are unequivocally intertwined/interrelated.  Of course, an abatement only puts the Harris County Lawsuit on hold (Plaintiffs' Harris County lawsuit will remain in Harris County abated, only until such time as the Nueces County Lawsuit exhausts its jurisdiction[2]), so that Plaintiffs may adjudicate its contract claims (such contract having the venue provision in favor of Harris County) at the appropriate time.   Please consider the following.

*Recent Events Absolutely Reveal the Two (2) Cases are Intertwined/Interrelated –*

We now know with certainty that the Harris County Lawsuit and Nueces County Lawsuit are inherently intertwined/interrelated.  Berry GP's filing of an application requesting injunctive

---

[1] The Motion to Transfer and Motion to Abate may be collectively referred to as the "Motions."  By this Motion, Axis joins in the Motions (and fully incorporates the Motions by this reference) and joins in this request for the Court to reconsider the Order (that is, joins in this Motion).

[2] "[The first-filed case] [h]aving the possession of jurisdiction of the case, that jurisdiction embraced everything in the case, and ever question arising which could be determined in it until it reached its termination, and the jurisdiction was exhausted.  While the jurisdiction lasted it was exclusive and could not be trenched upon by any other tribunal." *Cleveland v. Ward, 285* S.W. 1063, 1068 (Texas 1926); citing *French v. Hay,* 22 Wall. (U.S.), 250, 253.
NOTE:  Of course, Berry GP is free to file any and all meritorious pleadings, including an application seeking injunctive relief.  Historically, litigants have responded to competing lawsuits by filing pleas to the jurisdiction, pleas in abatements, applications for injunctive relief (including anti-suit injunctions to enjoin litigants), and more.

relief in Nueces County ("Berry GP's Nueces Application")[3] elucidates how the two (2) lawsuits involve the same core dispute. Lawrence Berry's ("Lawrence") Response in Opposition to Application for Temporary Restraining Order and Temporary Injunction ("Lawrence's Nueces Response")[4] crystalized that both cases are inherently intertwined/interrelated.

- In Lawrence's Nueces Response, Lawrence argues that "Movants Berry GP and RBT [Redfish Bay Terminals Inc.] now seek to have this Court [in the Nueces County Lawsuit] interfere with the Business Court's jurisdiction . . . [by filing of Berry GP's Nueces Application]."[5] This is an overt confession that the two (2) cases seek judicial relief relating to the same dispute (i.e., a judicial determination of ownership and control of Axis Midstream Holdings LLC ("Axis")).

- In Lawrence's Nueces Response, Lawrence argues that Berry GP's Nueces Application is "related to the ownership of Axis that is the **_very centerpiece_** of the Injunction Hearing proceeding in Judge Adrogue's Court next week."[6] (emphasis added). Movants and Lawrence clearly agree that the Harris County Lawsuit and Nueces County Lawsuit are seeking judicial relief relating to the same dispute (i.e., ownership and control of Axis).[7] No party has filed any plea to the jurisdiction (or other similar plea or motion) asserting that Nueces County's Judge Robert Galvan lacks jurisdiction.

- At time of hearing on Berry GP's Nueces Application (January 24, 2025), Lawrence – via legal counsel – argued:

> "Nobody contends that directly or indirectly, Marty, Bonnie

---

[3] See Exhibit 1: (Berry GP's Verified Application for Temporary Restraining Order and Temporary Injunction, sometimes referred to as "Berry GP's Nueces Application").

[4] See Exhibit 2 (Lawrence's Nueces Response).

[5] See Exhibit 2 (Lawrence's Nueces Response), at p. 2.

[6] See Exhibit 1 (Lawrence's Nueces Response), at p. 2.

[7] See Exhibit 3 (proposed court order granting TI in Harris County Lawsuit); compare Exhibit 4 (proposed court order granting TRO in Nueces County Lawsuit).

and Lawrence all have ownership in this project. What's at issue in that [Harris County Lawsuit] case is that Mr. Powers says that he did and he has documents to that effect and is asking for the [Harris County] Court there to take action as to – as to that Axis ownership. That's what [is] central to that [Harris County] case."[8]

Agreed. Movants and Lawrence agree that the "central" issue in the Harris County Lawsuit is "Axis ownership" (same claim being made by Berry GP in the Nueces County Lawsuit). These parties also apparently agree that neither Marty, Bonnie, nor Lawrence "have ownership [of Axis] . . . ." In fact, Berry GP is the owner of Axis, and to the extent there is disagreement about ownership of Axis, the threshold documents being scrutinized involve Berry GP, Redfish Bay Terminals Inc., and Lawrence Berry.[9] Restated: The "central" issue in the two (2) cases is "ownership" of Axis, and the only lawsuit on file with party claiming ownership of Axis is the Nueces County Lawsuit (i.e., Berry GP). None of the parties in the Harris County Lawsuit claim ownership of Axis.[10]

- At time of hearing on Movants' Plea in Abatement (in the Harris County Lawsuit, December 6, 2024), Ted – via counsel – argued:

  "And you can look at the relief that is sought in the [Movant's Nueces County] petition and in the [Movants'] counterclaim and the court down there [in Nueces] can

---

[8] See Exhibit 8: January 24, 2025 Nueces County Hearing Transcript, at p. 43
[9] See Exhibit 5 (document Lawrence/Ted Powers claims transferred Axis from Berry GP to Redfish Bay Terminals Inc.) and Exhibit 6 (document Lawrence/Ted Powers claims transferred Axis from Redfish Bay Terminals Inc. to Lone Star Ports Holdings LLC) – all parties agreeing that neither document signed with any Board of Directors' majority approval (as required by each corporation's bylaws). NOTE: Apparently, Ted Powers and Allied Ports LLC seek an adjudication of ownership/control without even joining the real parties in interest.
[10] The defect in parties in the Harris County Lawsuit will be addressed in a separate filing.

give all that relief and it won't have one – it won't have
any bearing at all on this case.[11]  And so I think that –
I think that there is no dominant jurisdiction."[12]

Based upon the exact same "petition" to which Mr. Dawson referred, Berry GP moved for injunctive relief.  In response to Berry GP's request for injunctive relief, Mr. Reasoner – for Lawrence – argued Berry GP's request for injunctive relief in Nueces County seeks relief that is the "very centerpiece"[13] of the Harris County Lawsuit (i.e., ownership and control of Axis);[14] and that "Movants Berry GP and [Redfish Bay Terminal] RBT now seek to have this Court [in the Nueces County Lawsuit] interfere with the Business Court's jurisdiction . . . [by Movants' Nueces Application]."[15]  Which is it?  Can Judge Robert Galvan (in the Nueces County, first-filed lawsuit) grant all relief requested by Berry GP (as Mr. Dawson promised), or does the second-filed lawsuit somehow take from Judge Robert Galvan his jurisdiction (power to be a judge of the dispute pending before him)?  This moment begs for relief.  Indeed, the two (2) cases (the Harris County Lawsuit and Nueces County Lawsuit) are inherently interrelated/intertwined.

- Stated differently:  On December 6, 2024, Ted's attorney stated to this Business Court, as follows:

. . . I will draft our proposed injunction in a way that it will not
interfere at all with whatever the injunction that exists down
in Nueces County.  . . . [W]e can certainly craft an injunction
that does not in any way impinge or infringe upon what the

---

[11] NOTE:  The Nueces County Lawsuit expressly prays that certain alleged transfers of Axis Midstream Holdings LLC be declared "void" – thereby confirming that Berry GP owns Axis, not Lone Star Ports Enterprises LLC (as claimed by Ted Powers).
[12] See Exhibit 7 (transcript of December 6, 2024 hearing), at p. 55.
[13] See Lawrence's Nueces Response, at p. 2.
[14] Berry GP is claiming ownership and control of Axis in the Nueces County Lawsuit, and Plaintiffs are claiming ownership and control of Axis in the Harris County lawsuit.
[15] Lawrence's Nueces Response.

Judge Galvan, I think is his name, down in Corpus Christi, what he's doing. I just want to let the Court know that."

The reality is the two (2) cases are – at this very moment – screaming for that relief which is Texas law.

*Movants' Have Followed Proper Protocol, and First-Filed Acquires Dominant Jurisdiction* –

Allen Lawrence Berry ("Lawrence") seems intent upon attacking Movants' counsel to persuade resolution of the dominant jurisdiction issue.[16] Towards this end, Lawrence's counsel argued to Nueces County's Judge Galvan "[t]hat Movants fail to disclose either the existence of the Business Court Lawsuit to this Court . . . ." – but this is FALSE. Movants' Nueces Application states: "As of October 31, 2024, Ted Powers and Lawrence (as friendly defendant) filed a new lawsuit in Harris County, Texas, to take control of Axis Midstream Holdings LLC."[17] Movants' Nueces Application did not fail to disclose the existence of the Business Court Lawsuit, but rather expressly disclosed the existence of the Business Court Lawsuit (the Harris County Lawsuit).[18] Enough said: let us not cast aspersions, but rather embrace the present issue.

---

[16] In a recent Nueces County Lawsuit document, Lawrence characterizes Movants' counsel's Verified Application for Temporary Restraining Order and for Temporary Injunction ("Nueces Application") ***filed on behalf of Berry GP, Inc.*** ("Berry GP") as "an improper attempt to circumvent . . . Order issued by Judge Adrogue . . . ." (Lawrence's Response in Nueces, at p. 9) and "procedural impropriety." (Lawrence's Response in Nueces, at p. 11). To the contrary, Berry GP is owner of Axis, and thus has an absolute right to protect its (Berry GP's) multi-million dollar investment by filing whatever pleadings and documents are indicated in the only pending legal action wherein Berry GP (owner of Axis) is a party to the legal proceeding.

[17] See Exhibit 1: Movant's Nueces Application, at p. 10, footnote 27.

[18] See Exhibit 1: Movants' Nueces Application, at p. 10, footnote 27. On January 24, 2025, Lawrence's attorney tried to float the lie again – and argued to Judge Robert Galvan: "It was remarkable, in their [Movants'] TRO and motion for temporary injunction, there was simply no mention of the case filed by Ted Powers and an entity he owns called Allied Ports . . . ." Transcript, at p. 36 (again, this statement by Lawrence's attorney proven false by review of Exhibit 1: Movants' Nueces Application, p. 10 footnote 27); and Lawrence's attorney again argued to Judge Galvan: " . . . when you file something like this and don't disclose that this other case exists . . . " See Transcript at p. 40; and – again – the statement is false.

**Step 1:** "Where, as here, two courts have concurrent jurisdiction to determine inherently intertwined issues, filing a dilatory plea in abatement is the proper method for drawing a court's attention to another court's possible dominant jurisdiction."[19]  This has occurred, and it is the proper method for seeking relief in the second-filed action (Harris County Lawsuit).

**Step 2:**  Plaintiffs and Lawrence argue against application of black letter law, and so let it be said that the scope of a dominant jurisdiction inquiry includes not only the breath of the pleading on file – but also amended petitions and added parties.

> "It is not required that the precise issues and all of the parties be included in the first filed suit before the second suit is filed, provided that the claims in the first suit can be amended to bring in all of the necessary and proper parties and claims."[20]

Berry GP is owner of Axis, and a party to the Nueces County Lawsuit since inception (and not a party to the Harris County Lawsuit).  Redfish Bay Terminals Inc. (a corporation that may, in the alternative, claim ownership) and Lone Star Ports Enterprises LLC (a limited liability company that Ted claims owns Axis) may both be added as parties to the Nueces County Lawsuit (and are not parties in the Harris County lawsuit).  All of these parties and claims are within the scope of the Nueces County Lawsuit (per *In re Coronado Energy EP Company*).

Step 3:  Are the two (2) lawsuits inherently intertwined/interrelated?  Yes, and let us not argue this any further.  Both lawsuits have requests pending for injunctive relief that is nearly

---

[19] *In re Puig*, 351 S.W.3d 201 (Texas 2011); citing *Mower v. Boyer,* 811 S.W.2d 560, 563 n. 2 (Texas 1991); *Wyatt v. Shaw Plumbing Company*, 760 S.W.2d 245, 247-248 (explaining that it is proper to file a plea in abatement when two inherently interrelated cases are filed in different counties).

[20] *In re Coronado Energy EP Company,* 341 S.W.3d 479, 481-482 (Tex.Civ.App. – San Antonio, 2011); *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 247 (Texas 1988).

identical. All seemingly now agree the "very centerpiece" of Plaintiffs' Harris County Lawsuit has been pleaded, briefed, argued, and submitted for Judge Galvan's consideration.

Step 4: What are the public policy considerations?

- "Abatement of a lawsuit due to the pendency of a prior suit is based on the principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues."[21] Comity asks that the judge in the second-filed action honor the judge in the first-filed action. Convenience asks that the pending case with at least one of the parties claiming ownership (Berry GP) be preferred. And the "orderly procedure" (most importantly) asks of us that two (2) courts not engage of battle for jurisdiction (power over) the dispute – but rather the second-filed action be abated.

- "The first-filed rule flows from "principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues."[22] "The default rule thus tilts the playing field in favor of according dominant jurisdiction to the court in which suit is first filed."[23]

- Finally, and again, "[The first-filed case] [h]aving the possession of jurisdiction of the case, that jurisdiction embraced everything in the case, and ever question arising which could be determined in it until it reached its termination and the jurisdiction was exhausted. While the jurisdiction lasted it was exclusive, and could not be trenched upon by any other tribunal."[24]

---

[21] *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 248 (Texas 1988).
[22] *In re J.B. Hunt Transportation Inc*., 492 S.W.3d 287 (Texas 2016), citing *Wyatt* at 248.
[23] *In re J.B. Hunt Transportation Inc*., 492 S.W.3d 287 (Texas 2016).
[24] *Cleveland v. Ward, 285* S.W. 1063, 1068 (Texas 1926); citing *French v. Hay,* 22 Wall. (U.S.), 250, 253.

Extensive briefing has already been filed by all parties. The magma-shift is the real world shift in positions forced by Berry GP's filing of Berry GP's Nueces Application, Lawrence's Nueces Response, and transcript of hearings.

**III.**

**<u>REQUEST FOR STAY OF HARRIS COUNTY PROCEEDINGS</u>**

With absolute respect for this Court, Movants request reconsideration of the Order denying Movants' Motions (and a stay pending this court's further consideration of recent events). If Your Honor is not so inclined, then Movants' do intend to file a Petition for Writ of Mandamus and request a stay pending resolution of such mandamus. Candidly, a final resolution of which court (Nueces v. Harris) has acquired jurisdiction of the competing requests for injunctive relief promotes an orderly judicial process. In the meantime, please allow these contents to confirm that in the absence of a TRO (the court may recall it expired on its own terms on December 6, 2024), no party to the Harris County Lawsuit has engaged in any action relating to Axis management/control – thus there is no need (and certainly no hurry) for the court's consideration of injunctive relief against Movants.

WHEREFORE, PREMISES CONSIDERED, Movants pray for all relief requested herein; and specifically pray that this Court grant its request for reconsideration of the Order denying Movants' Motions, and pray for a stay of proceeding to allow reconsideration and/or mandamus, and pray that Movants' Motions (upon reconsideration) be granted, and for such other and further relief – both at law and in equity – to which Movants may show themselves justly entitled.

9

Respectfully submitted,

**LAW OFFICES OF DOUGLAS ALLISON**
403 N. Tancahua Street
Corpus Christi, Texas 78401
T:     361-888-6002
F:     361-888-6651
E:     doug@dallisonlaw.com

BY:     */s/ Douglas A. Allison*
        **DOUGLAS A. ALLISON**
        State Bar No. 01083500

        **ROBERTS MARKLAND LLP**
        2555 N MacGregor Way
        Houston, Texas 77004
        E:     vg@robertsmarkland.com

BY:     */s/ Vanessa D. Gilmore*
        **VANESSA D. GILMORE**
        State Bar No. 07960010

        ATTORNEYS FOR DEFENDANTS
        MARTY BERRY, BONNIE BERRY, &
        AXIS MIDSTREAM HOLDINGS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record in accord with the Texas Rules of Civil Procedure on January 27, 2025.

        */s/ Douglas A. Allison*
        DOUGLAS A. ALLISON

10

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 96655627
Filing Code Description: Motions - All Other
Filing Description: Movants' Motion to Reconsider Court's Ruling on Plea in Abatement Mtn to Stay Pending Mandamus
Status as of 1/27/2025 4:57 PM CST

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephanie Sanchez | | sanchezst@gtlaw.com | 1/27/2025 4:48:15 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 1/27/2025 4:48:15 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 1/27/2025 4:48:15 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/27/2025 4:48:15 PM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 1/27/2025 4:48:15 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/27/2025 4:48:15 PM | SENT |

Associated Case Party: MarvinGlennBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/27/2025 4:48:15 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 96655627
Filing Code Description: Motions - All Other
Filing Description: Movants' Motion to Reconsider Court's Ruling on Plea in Abatement Mtn to Stay Pending Mandamus
Status as of 1/27/2025 4:57 PM CST

Associated Case Party: MarvinGlennBerry

| | | | | |
|---|---|---|---|---|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/27/2025 4:48:15 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/27/2025 4:48:15 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 1/27/2025 4:48:15 PM | SENT |

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Alistair Dawson | 5596100 | adawson@beckredden.com | 1/27/2025 4:48:15 PM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 1/27/2025 4:48:15 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 1/27/2025 4:48:15 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 1/27/2025 4:48:15 PM | SENT |

Associated Case Party: Allied Ports LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Roland Garcia | 7645250 | garciar@gtlaw.com | 1/27/2025 4:48:15 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 1/27/2025 4:48:15 PM | SENT |

Associated Case Party: Axis Midstream Holdings

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michael Hummell | 10271100 | hummellm@bayltd.com | 1/27/2025 4:48:15 PM | SENT |

# EXHIBIT 6



## THE BUSINESS COURT OF TEXAS
### ELEVENTH DIVISION

| | | |
|---|---|---|
| Albert Theodore Powers; Allied Ports LLC, | § § § | |
| Plaintiffs, | § § § | |
| v. | § § § | Cause No. 24-BC11A-0025 |
| Axis Midstream Holdings, LLC; Allen Lawrence Berry; Marvin Glenn Berry; and Bonnie Berry as successor in interest to Dennis Wayne Berry, | § § § § § | |
| Defendants. | § | |

---

### ORDER

---

Before the Court is Marvin Glenn Berry, Bonnie Berry, and Axis Midstream Holdings LLC's Motion to Reconsider Court's Ruling on Plea in Abatement ("Motion to Reconsider"). At this juncture, having considered the Motion to Reconsider; Alistair B. Dawson's January 28, 2025 Correspondence; Barrett H. Reasoner's January 28, 2025 Correspondence; the evidence presented; the arguments of counsel; and the current status of the law, the Court **ORDERS** that the Motion to Reconsider is **DENIED**.

SO ORDERED.

SIGNED: January 28, 2025

_____
Hon. Sofia Adrogué
Texas Business Court, Eleventh Division

# EXHIBIT 7



| | | |
|---|---|---|
| **ALBERT THEODORE POWERS;** | § | **IN THE BUSINESS COURT** |
| **ALLIED PORTS LLC,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **ELEVENTH DIVISION** |
| | § | |
| **AXIS MIDSTREAM HOLDINGS,** | § | |
| **LLC; ALLEN LAWRENCE BERRY;** | § | |
| **MARVIN GLENN BERRY; AND** | § | |
| **BONNIE BERRY, as successor in** | § | |
| **interest to DENNIS WAYNE BERRY** | § | |
| | § | |
| *Defendants.* | § | **HARRIS COUNTY, TEXAS** |

## PROPOSED SCHEDULING & CASE MANAGEMENT ORDER

### I.      BCLR 4 Meeting

The parties met and conferred over email on December 16, 2024.

### II.     Jurisdiction & Venue

The parties agree that the Court has subject matter jurisdiction.

Plaintiffs contend that venue is proper in Harris County, a county in the Eleventh Division of the Business Court as provided by the forum selection clause contained in the Investment Agreement attached as Exhibit 2 to Plaintiffs' Third Amended Petition. Alternatively, the Court has venue pursuant to Section 15.020 of the Texas Civil Practice & Remedies Code. Plaintiffs contend that the jury trial of this action should be held in Harris County under Section(s) 25A.015(d) of the Texas Government Code.

Defendant Lawrence Berry contends that venue is proper in Harris County.

Defendants Marty Berry and Bonnie Berry contend the Honorable Robert Galvan, 94th Judicial District Court of Texas, Nueces County, Texas acquired dominant jurisdiction of some or

all of these interrelated matters (claims, counter-claims, and cross claims as permitted by Texas Rule of Civil Procedure 93) made the subject of these Business Court proceedings; and – therefore – these Business Court proceedings must be abated or dismissed. Defendants Marty Berry and Bonnie Berry contend the written contract argued by Plaintiffs to force venue in Harris County was: (1) not signed by Marty Berry or Bonnie Berry; (2) not signed by Berry GP (owner of Axis Midstream Holdings LLC), the real party in interest; and (3) unenforceable as a venue selection clause (it is not a forum selection clause) – conflicting with Texas Civil Practice & Remedies Code ("TCPRC"), Chapter 15; and further contend that TCPRC 15.020 is inapplicable pursuant to Texas judicial authority cited in briefing. Defendants Marty Berry and Bonnie Berry contend venue is mandatory in Nueces County, Texas (as set forth in briefing); and that a jury trial is only proper in Nueces County, Texas.

Defendant Axis Midstream Holdings LLC joins in all of Marty Berry's and Bonnie Berry's arguments and briefing, as set forth in Marty Berry's Plea in Abatement, Marty Berry's and Bonnie Berry's Motion to Transfer Venue, and Marty Berry's / Bonnie Berry's Motion to Dismiss, Remand, and/or Transfer Venue.

### III. Parties

Identify any unserved parties or anticipated additional parties, and their relationship to the parties and claims in the case. List and briefly explain any anticipated interventions. Describe class-action or collective-action issues, if any; and provide the proposed class definition and any disagreement regarding same.

Please certify that all parties have filed the Corporate Disclosure form required by BCLR 4(b).


Plaintiffs: All parties to this proceeding have been served, and Plaintiffs do not anticipate adding additional parties. Plaintiff Allied Ports LLC is contemporaneously filing its Corporate Disclosure form.

Defendant Lawrence Berry does not anticipate adding additional parties. Defendant Lawrence Berry is contemporaneously filing his Corporate Disclosure form.

Defendants Marty Berry and Bonnie Berry believe that all necessary parties are not before this Business Court. Berry GP Inc. ("Berry GP") is sole owner and sole manager of Axis Midstream Holdings LLC – the centerpiece of Plaintiffs' lawsuit. Berry GP is owned 100% by the LDMA Limited Partnership ("LDMA"), and LDMA is also not a party to these Business Court proceedings. LDMA is controlled by Becon Inc. ("Becon"), its sole general partner – and Becon Inc. is also not a party to these Business Court proceedings. All relief requested by Plaintiffs cannot be granted without inclusion of additional, necessary parties.

Defendant Axis Midstream Holdings LLC joins in all of Marty Berry's and Bonnie Berry's arguments set forth above (relating to the necessary parties not joined in these proceedings).

2

## IV. Applicable Law

The substantive law of the State of Texas governs this action. Texas procedural law governs this action.

## V. Deadlines & Discovery[1]

|  | **Discovery Commencement & Limitations** |
|---|---|
|  | Pursuant to Texas Rule of Civil Procedure ("TRCP") 192.2(a)(1), the discovery period begins when the first initial disclosures are due under TRCP 194.2. |
|  | The following discovery limits apply, incorporating TRCP 190.3(b)'s definitions and rules for subparts: |
| **50 hrs** | Each side is limited to this number of total hours for oral depositions of fact witnesses, not including experts.  The parties may alter this number by agreement. |
| 25 | Each party is limited to serving this number of interrogatories on another. |
| 1/31/25 | **Electronically Stored Information (ESI) Protocol**[2] |
|  | By this date, the parties must meet and confer on an ESI protocol, including the parameters for preservation of ESI and the procedures the parties will employ to determine search terms and methodology for identifying ESI in response to a discovery request calling for such information. The parties should be prepared to discuss the ESI protocol at the scheduling conference. |
|  | ESI will be produced in **Native** format in the form and manner in which they are kept in the ordinary course of business (depending on the form of the document), except when the parties may agree upon a different format. |
|  | Information which requires redaction or documents that are not available in electronic form shall be produced as searchable single page **.TIF** or multipage **.PDF** images, with logical unitization preserved.  Redactions should not be accomplished in a manner that serves to degrade the ability to electronically search the unredacted portions of the document as part of the production process. |
|  | Parent/child relationships should be maintained (i.e., documents should be produced consecutively with their attachments).  Folders and file names should be provided. |

---

[1] Defendants Marvin Glen Berry, Bonnie Berry, and Axis Midstream Holdings, LLC do not agree with the dates set forth in this proposed schedule.

[2] Defendants Marvin Glen Berry, Bonnie Berry, and Axis Midstream Holdings, LLC agree with the first and fifth paragraphs, but do not agree to the second, third, and fourth paragraphs.

| | |
|---|---|
| | The production should include a Concordance load file in **.DAT** format that includes: standard Concordance delimiters that divide the metadata fields; a first line of the file containing the field names; and standard metadata fields, including without limitation:<br><br>• BEGBATES  • ENDBATES<br>• BEGATTACH  • ENDATTACH<br>• CUSTODIAN  • DATESENT<br>• TIMESENT  • DATERCVD<br>• TIMERCVD  • DATECREATED<br>• TIMECREATED  • DATELASTMOD<br>• TIMELASTMOD  • EMAIL_SUBJECT<br>• FROM  • TO<br>• CC  • BCC<br>• TITLE  • SUBJECT<br>• AUTHOR  • FILEPATH<br>• FILENAME  • FILEEXT<br>• MD5HASH  • FILESIZE<br>• NATIVEFILE (Folder path for files provided natively)  • OCRPATH (Folder path for multi-page text files)<br><br>The parties may modify their ESI protocol by agreement at any time, without Court involvement. |
| 2/14/25 | **Joinder**<br><br>All parties must be added and served, whether by amendment or third-party practice, by this date.<br><br>The party causing the joinder must provide a copy of the Scheduling Order at the time of service.<br><br>All joinder must also comply with TRCP 37–41. |
| 5/2/25<br><br>6/9/25 | **Expert Witness Designations**<br><br>Expert witness designations must include the information listed in Rule 195.5(a). Rule 193.6 will govern any failure to timely make, amend, or supplement a designation.<br><br>By this date, parties seeking affirmative relief must serve their expert witness designations.<br><br>By this date, all other parties must serve expert witness designations. |

| | |
|---|---|
| 7/9/25 | By this date, all parties must designate any rebuttal experts. |
| 7/11/25<br><br>8/4/25 | **Pleading Amendments**<br><br>All pleading amendments must be filed by this date, absent leave of Court or the exception provided immediately below.<br><br>If a party adds a claim or cause of action on or near the date above, other parties may add only defensive pleadings in response to the new claim or cause of action by this date.<br><br>These deadlines are outer limits and do not relieve the parties of any obligations to act promptly or timely. |
| 8/15/25 | **End of Discovery**<br><br>Fact discovery must be completed by this date. Expert discovery may continue until the deadline for completing expert witness depositions, below.<br><br>Parties must serve discovery requests early enough that the response is due within the relevant discovery period. |
| 6/24/25<br><br><br>8/15/25<br><br>8/15/25 | **Expert Witness Depositions**<br><br>A party seeking affirmative relief must make its expert(s) available for deposition by the following deadlines:<br><br>    If no expert report is furnished under TRCP 195.3, or<br>    If an expert report is furnished under TRCP 195.3.<br><br>A party not seeking affirmative relief must make its expert(s) available for deposition by this date.<br><br>All rebuttal expert(s) must be made available for deposition by this date. |
| 6/27/25<br><br><br><br>7/11/25 | **Alternative Dispute Resolution**<br><br>By this date the parties must file either (1) an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) a statement that one or more parties do not agree to ADR at this time.<br><br>ADR conducted pursuant to the agreement of the parties must be completed by this date. The parties may modify this date by agreement. |
| 9/26/25 | **Dispositive Motions & Pleas**<br><br>Dispositive motions and pleas, including motions for summary judgment or partial summary judgment, must be scheduled for an oral hearing or written |

| | |
|---|---|
| | submission not later than this date. |
| **10/10/25** | **Challenges to Expert Testimony**<br><br>All *Daubert/Robinson* motions or other motions to exclude, limit, or otherwise challenge expert testimony must be filed by this date. |
| **10/27/25**<br><br><br>**11/3/25**<br><br>**11/7/25**<br><br>**11/10/25** | **Proposed Jury Charges**<br><br>In a jury trial case, parties must exchange, confer about, and file proposed jury charges as follows:<br><br>By this date, each party must exchange its proposed jury questions and instructions, if any, with the other parties.<br><br>By this date, each party must inform the other parties, in writing, whether it agrees or objects to each question and instruction proposed by another party.<br><br>By this date, all parties must meet and confer, in a good faith effort to reach agreement on jury questions and instructions.<br><br>By this date, the parties will file:<br><br>   (a)   a Joint Proposed Jury Charge that includes all stipulated facts and proposed jury questions and instructions on which all parties agree, and<br><br>   (b)   if a party wishes to propose jury questions or instructions that were not agreed to by the other parties, that party must file a Disputed Proposed Jury Charge containing any such proposed jury questions or instructions.<br><br>Upon filing, the parties must email the submissions in (a) and (b) to the Court at *BCDivision11A@txcourts.gov* (for Judge Adrogué) or *BCDivision11B@txcourts.gov* (for Judge Dorfman) in a Word format, copying the other parties.<br><br>This process is a precursor to, and not in place of, the charge conference that will be held at trial. |
| **10/27/25** | **Witness & Exhibit Lists**<br><br>By this date, the parties must exchange lists of the witnesses and exhibits they expect to call/offer at trial.<br><br>Exhibit lists should be formatted as follows:<br><br>{{EXHIBIT_TABLE}} |

| Exhibit # | Admitted | Description |
|---|---|---|
| 1 | | Letter from A to B dated 9/1/2024 |
| 2 | | Photograph of land taken 9/1/2024 |

| 10/27/25 | **Deposition Excerpts** |
|---|---|
| | By this date, the parties must exchange any deposition excerpts they intend to use at trial; cross-designations must be exchanged within 7 days after this date. |
| | For audio/video excerpts, a party must provide both the audio/video cuts the party intends to play and the transcript page and line designations. If a party intends to read the deposition testimony from the transcript, the party need only provide page and line designations. |
| 11/7/25 | **Exhibit Binders** |
| | By this date, each party must provide the Court with physical / PDF binder(s) containing bates-stamped copies of all exhibits the party intends to offer at trial. In the case of physical items offered as exhibits, a photograph or other reproduction of the physical item may be used. |
| | The physical / PDF binders must begin with the party's exhibit list and the exhibits should be tabbed and numbered sequentially, consistent with the exhibit list. |
| 10/27/25 | **Motions in Limine / Motions to Exclude** |
| | By this date, all parties will file any motions in limine or motions to exclude or otherwise limit the admission of non-expert evidence. |
| 10/27/25 | **Proposed Pretrial Order** |
| | By this date, the parties must, jointly or individually, file a Proposed Pretrial Order. |
| | **Pretrial Conference** |
| | The Court will set a pretrial conference to discuss all aspects of the case, including ADR. |
| 11/10/25<br>5 days | **Trial**<br><br>Barring further order of the Court, trial will commence on this date.<br>The parties preliminarily estimate the trial will last ____ days. |

## VI. Sealing & Protective Orders

For the convenience of the parties, the Court has provided a form protective order on its website. Proposed protective orders that substantially adopt the form provided will typically be approved by the Court. However, the parties are free to modify or vary the form order as they deem appropriate. **A protective order must comply with, and cannot supersede or displace TRCP 76a**, which will govern all evidence used as a "court record," as that term is defined therein.

## VII. Settlement

In their meeting, the parties should discuss the possibility for prompt, agreed resolution of the case, and whether they are amenable to an early mediation or other settlement efforts.

## VIII. Trial & Pretrial Conference

The parties must file a Proposed Pretrial Order (see deadline above). The Proposed Pretrial Order will address trial issues such as the procedures for voir dire, motions in limine, handling evidence, the time needed for trial, notice of daily witness expectations, court reporting, and conducting trial. The parties and the Court may discuss these issues and any other outstanding matters at the pretrial conference, after which the Court will issue its Pretrial Order.

## IX. Consideration of Expedited/Streamlined Procedures

The parties are directed to discuss appropriate measures to simplify the issues, eliminate frivolous or unsupported claims or defenses, and streamline discovery and/or the presentation of proof at trial, including without limitation the following:

- Seeking admissions or stipulations as to facts and documents, and obtaining advance rulings on the admissibility of disputed evidence;
- Narrowing factual issues to eliminate or avoid unnecessary or cumulative presentation of evidence, disproportionate discovery burdens, or needless delay or repetition at trial;
- Whether periodic case management conferences with the Court would be beneficial and, if so, the proposed frequency of those conferences;
- Whether discovery might benefit from being conducted in phases, limited to particular issues, or from the appointment of a special master or discovery referee;
- Whether legal issues or disputes can be narrowed by agreement, by summary judgment or other motion, by separate trial (whether summary, bench, or mini-) of an issue or claim; and, if so, whether these measures can be employed at an early stage of the proceeding;
- Whether supplemental jurisdiction under Texas Government Code Section 25A.004(f) exists over any claim(s); and, if so, whether the parties will agree to try them in the Business Court proceeding;
- Whether time limits at trial would facilitate the parties to ensure an orderly presentation of evidence and efficient use of the Court's time, within the time estimate the parties have provided for final trial; and
- Whether the parties can agree to any of the "Susman Rules" (please review the **"Trial by Agreement" article and checklist**).

## X. Modification of Scheduling Order

The parties may move, jointly or individually, to modify this order at any time. However,

8

modifications of the order cannot be used to justify postponement of trial. Requests to postpone trial are disfavored.

ENTERED: _____

_____
JUDGE SOFIA ADROGUÉ

AGREED:

**BECK REDDEN LLP**

*/s/ Alistair B. Dawson*
Alistair B. Dawson
State Bar No. 05596100
M. Jake McClellan
State Bar No. 24109525
Madeline E. Gay
State Bar No. 24138681
E-mail: adawson@beckredden.com
E-mail: jmcclellan@beckredden.com
E-mail: mgay@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:     (713) 951-3700
Telecopier:     (713) 951-3720

**ATTORNEYS FOR PLAINTIFF
ALBERT THEODORE POWERS**

**GREENBERG TRAURIG, LLP**

*/s/ Roland Garcia*
Roland Garcia
State Bar No. 07645250
Steven Higginbotham
State Bar No. 24125274
E-mail: garciar@gtlaw.com
E-mail: higginbothams@gtlaw.com
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
Telephone:  (713) 374-3500

9

Facsimile:   (713) 374-3505

**ATTORNEYS FOR PLAINTIFF**
**ALLIED PORTS LLC**

GIBBS & BRUNS LLP

*/s/ Barrett H. Reasoner*
Barrett Reasoner
State Bar No. 16641980
Michael R. Absmeier
State Bar No. 24050195
L. Bruce Baldree
State Bar No. 24116064
Sydney G. Ballesteros
State Bar No. 24036180
E-mail: breasoner@gibbsbruns.com
E-mail: mabsmeier@gibbsbruns.com
E-mail:  bbaldree@gibbsbruns.com
E-mail: sballesteros@gibbsbruns.com
1100 Louisiana, Suite 5300
Houston, Texas 77001
Telephone:      (713) 650-8805
Telecopier:      (713) 750-0903

**ATTORNEYS FOR DEFENDANT**
**ALLEN LAWRENCE BERRY**

AGREED EXCEPT AS SET FORTH IN FOOTNOTES 1 AND 2 ABOVE:

LAW OFFICES OF DOUGLAS ALLISON

*/s/ Douglas A. Allison*
Douglas A. Allison
State Bar No. 01083500
E-mail: doug@dallisonlaw.com
403 N. Tancahua Street
Corpus Christi, Texas 78401
Telephone:      (361) 888-6002
Telecopier:      (361) 888-6851

**ATTORNEYS FOR DEFENDANTS**
**MARTIN GLENN BARRY**
**AND BONNIE BERRY**

10

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Verm on behalf of Alistair Dawson
Bar No. 5596100
lverm@beckredden.com
Envelope ID: 95373093
Filing Code Description: Proposed Order
Filing Description: Proposed Scheduling & Case Management Order
Status as of 12/16/2024 5:10 PM CST

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alistair Dawson | 5596100 | adawson@beckredden.com | 12/16/2024 4:46:03 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 12/16/2024 4:46:03 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 12/16/2024 4:46:03 PM | SENT |

Associated Case Party: Allied Ports LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Roland Garcia | 7645250 | garciar@gtlaw.com | 12/16/2024 4:46:03 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 12/16/2024 4:46:03 PM | SENT |

Associated Case Party: Axis Midstream Holdings

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael Hummell | 10271100 | hummellm@bayltd.com | 12/16/2024 4:46:03 PM | SENT |

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 12/16/2024 4:46:03 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 12/16/2024 4:46:03 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 12/16/2024 4:46:03 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 12/16/2024 4:46:03 PM | SENT |

Case Contacts

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Verm on behalf of Alistair Dawson
Bar No. 5596100
lverm@beckredden.com
Envelope ID: 95373093
Filing Code Description: Proposed Order
Filing Description: Proposed Scheduling & Case Management Order
Status as of 12/16/2024 5:10 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephanie Sanchez | | sanchezst@gtlaw.com | 12/16/2024 4:46:03 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 12/16/2024 4:46:03 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 12/16/2024 4:46:03 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 12/16/2024 4:46:03 PM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 12/16/2024 4:46:03 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 12/16/2024 4:46:03 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 12/16/2024 4:46:03 PM | SENT |

Associated Case Party: MarvinGlennBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 12/16/2024 4:46:03 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 12/16/2024 4:46:03 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 12/16/2024 4:46:03 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Anna Erickson on behalf of Alistair Dawson
Bar No. 5596100
aerickson@beckredden.com
Envelope ID: 97338804
Filing Code Description: Response
Filing Description: Response to Relators' Emergency Motion for Temporary Relief
Status as of 2/13/2025 11:28 AM CST

Associated Case Party: Marty Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas AAllison | | doug@dallisonlaw.com | 2/13/2025 11:16:36 AM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 2/13/2025 11:16:36 AM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 2/13/2025 11:16:36 AM | SENT |
| Vanessa AGilmore | | vg@robertsmarkland.com | 2/13/2025 11:16:36 AM | SENT |

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alistair Dawson | 5596100 | adawson@beckredden.com | 2/13/2025 11:16:36 AM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 2/13/2025 11:16:36 AM | SENT |
| Michael JakeMcClellan | | jmcclellan@beckredden.com | 2/13/2025 11:16:36 AM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 2/13/2025 11:16:36 AM | SENT |
| Madeline Gay | | mgay@beckredden.com | 2/13/2025 11:16:36 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rosa Brennan | | rbrennan@gibbsbruns.com | 2/13/2025 11:16:36 AM | SENT |
| Michelle Bultman | | MBultman@gibbsbruns.com | 2/13/2025 11:16:36 AM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 2/13/2025 11:16:36 AM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 2/13/2025 11:16:36 AM | SENT |

Associated Case Party: Allied Ports, LLC

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Anna Erickson on behalf of Alistair Dawson
Bar No. 5596100
aerickson@beckredden.com
Envelope ID: 97338804
Filing Code Description: Response
Filing Description: Response to Relators' Emergency Motion for Temporary Relief
Status as of 2/13/2025 11:28 AM CST

Associated Case Party: Allied Ports, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Roland Garcia | 7645250 | garciar@gtlaw.com | 2/13/2025 11:16:36 AM | SENT |

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael Absmeier | 24050195 | mabsmeier@gibbsbruns.com | 2/13/2025 11:16:36 AM | SENT |
| Barrett Reasoner | 16641980 | breasoner@gibbsbruns.com | 2/13/2025 11:16:36 AM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 2/13/2025 11:16:36 AM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 2/13/2025 11:16:36 AM | SENT |

Associated Case Party: Honorable Sofia Adrogue

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Hon. Sofia Adrogue | | BCDivision11A@txcourts.gov | 2/13/2025 11:16:36 AM | SENT |